JONESBORO v. MONTAGUE.

Opinion delivered March 15, 1920.

1. MUNICIPAL CORPORATIONS — DELEGATION OF POWERS.—Where the powers to be performed by the governing body of a municipal corporation are of a ministerial, administrative or executive nature, they may delegate the powers to a committee.

2. MUNICIPAL CORPORATIONS—AUTHORITY OF FINANCE COMMITTEE.— A finance committee appointed by a city council had the authority to audit, examine and allow the account of the chief of police, and such settlement is binding upon the city, in the absence of fraud or mistake.

3. MUNICIPAL CORPORATIONS—AUDIT OF ACCOUNTS OF CHIEF OF POLICE.—Where, pursuant to charges of fraud, a city council investigated the accounts of the chief of police, its determination of the state of his accounts is binding upon the city, in the absence of a showing of fraud or mistake.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Chancellor; affirmed.

STATEMENT OF FACTS.

The city of Jonesboro brought this suit in equity against W. S. Montague and his bondsmen for an accounting of funds coming into the hands of Montague while serving as chief of police of the city of Jonesboro, Arkansas, from April 1, 1913, to April 12, 1915. Montague admitted that he was indebted to the city in the sum of $100 for a note received by him at the beginning of his term from his predecessor in office. He denied that he was indebted to the city in any other sum. The city employed T. K. Eddins, a bookkeeper of twenty-five years experience, as an expert accountant to audit the accounts of W. S. Montague as chief of police aforesaid. Eddins made a complete audit of the accounts of Montague and found that the latter owed the city of Jonesboro the sum of $4,026. In auditing the accounts the witness examined the monthly settlements of Montague with the city council, the jail records, the police court docket, the minutes of the city council and the record of the criminal docket of the circuit court. He states that a careful comparison and examination of all these different records in connection with the monthly accounts of Montague show that the latter is indebted to the city in the sum above stated.

On the other hand, according to the testimony of Montague and his attorney, who prepared all his settlements except the first monthly one, Montague is not due the city anything except $100 which he received from his predecessor in office. According to their testimony, Montague kept a careful account of all the fines and costs collected by him while serving as chief of police of the city of Jonesboro during the time above stated. His statements of accounts were audited by the finance committee of the city council and carefully compared with the docket of the police court, the jail record and the account of the sheriff of the amounts collected by him upon appeal cases in the circuit court from the police court.

Montague paid the amounts found due in these settlements. There were strained relations between him and the judge of the police court. At least twice during the time stated, the judge of the police court made charges against Montague and a committee appointed by the city council carefully investigated these charges and again audited his accounts. Montague settled with the city according to the amounts found due the city as a result of these examinations of his accounts. Montague and his witnesses state that it is almost impossible now to give a correct statement of his accounts. In many instances the judge of the police court remitted fines against defendants in order to obtain their testimony in other cases. His docket does not disclose these facts, and it is extremely difficult to obtain the facts now. In other cases the defendants were kept in jail for a while and then discharged without any showing on the police court records. Many cases were appealed to the circuit court, and in all those cases where the defendant was found guilty, the fine and costs were collected by the sheriff, and Montague did not have any of these amounts in his hands. The sheriff settled with the city treasurer as to all fines collected on cases appealed to the circuit court. It was not thought that the question of his accounts would be opened again, and many of his statements had been lost or mislaid, so that it is now impossible for Montague to give a correct account of the amount of fines and costs collected by him.

Members of the finance committee testified that they carefully audited Montague's accounts and compared them with the police court records, the jail records, the city treasurer's records, and the minutes of the city council. They stated that the settlements in each instance represented the true amount that Montague owed the city.

The record in the case is very voluminous and is too long to be encompassed within the proper scope of an opinion. We believe, however, that we have sufficiently

stated its substance so as to fairly present the issues raised by the appeal.

The chancellor found the issues in favor of the defendant and held that the examination and investigation of his accounts as aforesaid, was conclusive upon the city except as to the $100 item admitted by Montague.

A decree was entered accordingly and the city has appealed.

*H. W. Applegate,* for appellant.

The evidence fully shows that Montague owed the city, and that he was short in his collections, and that there were mistakes, errors and false credits in his accounts and reports, and it was the duty of the court to charge Montague with all these. 42 Ark. 129; 51 *Id.* 198; 119 *Id.* 271; 112 *Id.* 91. Fraud was alleged and proved and also admitted, and the record shows a balance due the city. The master's report that he was behind $4,026 is conclusive and the judgment should be reversed.

*Basil Baker,* for appellee.

Appellant has wholly failed to make out its case. No fraud, deceit, mistake or misrepresentation is proved. The findings of the chancellor are conclusive as to the facts and there are no errors of law.

HART, J. (after stating the facts). Section 5465 of Kirby's Digest provides that all fines and penalties imposed by the mayor's or police court in any city or town in this State shall be paid into the city or town treasury, and that the city or town councils shall have the power to prescribe all necessary regulations for the collection and account for said fines and penalties.

Pursuant to this section the accounts of Montague, as chief of police, were referred by the city council to the finance committee for audit and allowance. The city council, under the statute, was the proper tribunal to audit the accounts of Montague and settle with him. When the powers to be performed by the governing body of municipal corporations are of a ministerial, adminis-

trative, or executive nature, they may delegate the power to a committee. The business of municipal corporations, like other corporations, must be conducted through agents. To segregate a municipal corporation from all other corporations in the methods employed in the transaction of business would prove highly detrimental to all concerned, and if it could not act upon any matter properly before it which also affected the rights of its officers, few competent persons could be induced to accept such offices. The finance committee had the authority to audit, examine and allow the accounts of Montague. Within the scope of its authority, in the absence of fraud or mistake, the action of the committee will bind the city council. The audit and allowance had the force and effect of a settlement between individuals. It was an admission by the committee that the accounts of Montague were correct, and while it was in no sense an adjudication of the state of his accounts, it had the force and effect of a settlement and was valid and binding upon the city, in the absence of fraud or mistake. In addition to the audit and examination of his accounts by the finance committee, the judge of the police court twice during his administration preferred charges of fraud against Montague in settling his accounts. Pursuant to the charges an investigation of Montague's accounts was again made. The city was represented by its counsel, and its determination of the state of his accounts upon such investigation should be regarded as valid and binding upon the city in the absence of a showing of fraud or mistake. It is true that the expert accountant employed by the city shows that his investigation of Montague's accounts, in connection with the records of the police court, the city treasurer's record, the jail record, and the criminal record of the circuit court, establishes that Montague is indebted to the city in the sum of $4,026. No specific errors or fraud in stating his accounts are shown. It is shown by Montague and his witnesses that it would be almost impossible for him to restate his accounts now, and under the rule above stated this would not be required of him. Under our statute

where a conviction was obtained on appeal in cases from the municipal court to the circuit court the sheriff would collect the fines. The witnesses, also, pointed out how in many instances the judge of the municipal court would remit the fines in order to induce the defendants to testify in behalf of the city in other cases. The jail records were also imperfect. For those and other reasons it is apparent that Montague could not now restate his accounts, and he is not required to do so. It devolved upon the city to point out and establish specific errors or fraudulent acts upon the part of Montague in making his settlements, and, not having done so, the chancellor properly held that Montague and his bondsmen were not liable to the city for the accounts sued on.

It follows that the decree will be affirmed.