Sanders *v.* Flenniken.

Opinion delivered November 11, 1929.

306

*A. D. Murphy, M. L. Allday* and *R. M. Hutchins,* for appellant.

*Marsh, McKay & Marlin,* for appellee.

HART, C. J., (after stating the facts). Appellants brought this suit in equity, and asked that certain conveyances by appellees be canceled as clouds upon their title. Such a suit is of purely equitable cognizance, although appellants ask that the title to the land be also declared in themselves, and that they have possession under their claim of title.

Appellees pleaded in bar of the recovery of the land by appellants that they were guilty of laches. The doctrine of laches is entirely a defense in equity, and, if the facts justified it, constituted a bar to the right of appellants to the relief asked by them.

Mere lapse of time before bringing suit, without change of circumstances or in the relation of the parties, will not constitute laches. Not only must there have been unnecessary delay, but it must appear that, by reason of the delay, some change has occurred in the condition or relation of the parties to the property which would make it inequitable to enforce the claim. So long as the parties are in the same condition, a claim for land may be asserted within the time allowed by law. But when, knowing his rights, a party takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to

his former state if the rights should be enforced, delay becomes inequitable, and operates as a species of estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but, when the court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief. This doctrine has been recognized and applied according to the facts of the particular case in a great many cases by this court. It would serve no useful purpose, and would make this opinion too long to cite all of them. We deem it only necessary to cite a few of them in which the doctrine has been applied in cases of this sort: *Avera* v. *Banks,* 168 Ark. 718, 271 S. W. 970; *Walker-Lucas-Hudson Oil Co.* v. *Hudson,* 168 Ark. 1098, 272 S. W. 836; *Horn* v. *Hull,* 169 Ark. 463, 275 S. W. 905; *Langston* v. *Hughes,* 170 Ark. 272, 280 S. W. 374; *Clark* v. *Friend,* 174 Ark. 26, 295 S. W. 392; and *Clark* v. *Wilson,* 174 Ark. 669, 297 S. W. 1008.

The doctrine of laches has also been recognized and applied by the Supreme Court of the United States in cases involving oil and mining lands. The case of *Taylor* v. *Salt Creek Consolidated Oil Co.,* 285 Fed. 532, contains a review of the decisions of the Supreme Court of the United States in cases of this sort, and an instructive discussion of the reason for the application of the doctrine in oil and mining cases. In this connection, we quote from the opinion in *Patterson* v. *Hewitt,* 195 U. S. 309, 25 S. Ct. 35, the following:

"There is no class of property more subject to sudden and violent fluctuations of value than mining lands. A location which today may have no salable value may in a month become worth its millions. Years may be spent in working such property, apparently to no purpose, when suddenly a mass of rich ore may be discovered from which an unusual fortune is realized. Under such circumstances, persons having claims to such property are bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced."

In *Twin-Lick Oil Co.* v. *Marburg,* 91 U. S. 587, the court said:

"Property worth thousands today is worth nothing tomorrow; and that which today would sell for a thousand dollars at its fair value may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice therefore is obvious of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit. While a much longer time might be allowed to assert the right in regard to real estate whose value is fixed, on which no outlay is made for improvement, and but little change in value, the class of property here considered, subject to the most rapid, pregnant, and violent fluctuations in value of anything known as property, requires prompt action in all to hold an option whether they will share its risks or stand clear of them."

From these citations it will be seen that this court, as well as the Supreme Court of the United States, has uniformly recognized that, on account of the fluctuating and uncertain values of oil and gas lands, parties asserting title thereto must act more promptly than in ordinary cases in which the values remain practically the same.

Of course, it is equally well settled that, when the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known to him were such as to put the duty of inquiry upon a man of ordinary intelligence. *Walker-Lucas-Hudson Oil Co.* v. *Hudson,* 168 Ark. 1098, 272 S. W. 836; and *Johnson* v. *Standard Mining Co.,* 148 U. S. 360, 13 S. Ct. 585. In the latter case the court said:

"While there is no direct or positive testimony that plaintiff had knowledge of what was taking place with

respect to the title or development of the property, the circumstances were such as to put him upon inquiry; and the law is well settled that, where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.''

Tested by this well-settled rule, we think the court properly held that appellants were guilty of laches. Some of them resided in the same vicinity in which the lands were located at the time of their father's death, and have continued to reside there ever since. The rest of the appellants either have resided in the same community ever since their father's death or have lived in the same locality. Although some of them stated that they had paid taxes during some of the years, the record shows that the purchasers at the foreclosure sale under the power contained in the deed of trust and their grantees have paid taxes on the land ever since 1907. Two of the appellants who executed the deed of trust lived on the land at the time of its sale under the power contained therein. They moved off of the land after the foreclosure, and, although they continued to live in the same vicinity, never exercised any other acts of ownership over the land, or attempted to do so. In 1922 appellants went to one of their attorneys in the present suit, who was then an abstracter of titles, but who had not yet been admitted to practice law, and stated facts under which they claimed the land to him. He advised them that he thought that they might recover the land. This shows at least that they had knowledge of the facts upon which they based their claim at that time. Notwithstanding this, they delayed bringing their suit until some time in 1925. During this time Mrs. Flenniken, who claimed title to the land under deed from the purchasers at the foreclosure sale, executed an oil lease as sole owner of the land. She thus bound herself to the lessees for the performance of the covenants in her lease, and upon faith of her owner-

ship they commenced extensive drilling on the land for oil and gas. They paid Mrs. Flenniken the sum of $20,000 under the lease, and also over $32,000 in royalties. Before the suit was commenced, in 1925, the original mortgagees and the trustees under the mortgage had died. Alymer Flenniken had also died. After the purchase of the land by the firm of Marsh & Flenniken, Flenniken alone looked after it, because he had been reared in that part of the county where the lands were situated. These persons might have shed light upon the question of appellants' claim of title. Alymer Flenniken died after 1922, and thus appellants waited until appellees could not prove any facts known by him with regard to the claim of title of appellants. It will be remembered that appellants admitted themselves that they knew in 1922 of the facts under which they claim title. The widow of Seaborn Sanders, from whom appellants claim to inherit the land, died in 1919.

Under these circumstances, appellants' claim should not in equity be enforced. After the changes of situation during all of these years, after the changes in title, after the execution of the oil lease and the subsequent discovery of oil, and after evidence of the facts upon which they base their title has been lost by the death of disinterested witnesses who best knew them, equity will not now enforce a claim which it seems would not likely have been asserted if oil had not been discovered on the land. The undisputed evidence shows that the land was comparatively worthless except for the mineral rights. They could not rest on their rights and see appellee expend great sums of money in exploring for oil and gas, and, after the land had suddenly and unexpectedly made a great increase in value on account of this, come into a court of equity, and demand the enforcement of their rights.

Therefore the chancellor properly held that they were barred of relief under the doctrine of laches, and the decree will be affirmed.