WALKER *v.* NORTON, EXECUTOR.

4-5724 135 S. W. 2d 315

Opinion delivered January 8, 1940.

*Kent Jackson,* for appellant.

*Shane & Fendler* and *Ivy & Nailling,* for appellee.

BAKER, J. In this case, Georgia Norton Walker sued her father in April, 1935, to recover the value of certain timber which she alleges he removed from her land without accounting to her for the value thereof.

Since plaintiff seems to be uncertain as to the nature of the suit, we cannot determine whether the suit has been instituted against Norton as a guardian, or curator, or whether the plaintiff is attempting to make him account as a trustee only. In this state of uncertainty, we treat the whole state of proceedings as a scattergun project giving due consideration to all of the record that has been abstracted. The wife of E. M. Norton who was also mother of the appellant owned considerable property at the time of her death. She left a will for its disposition, one of the provisions of which was that the appellant should have 80 acres of land to be selected by E. M. Norton, who is the defendant in this suit. The remainder of her land was to be divided so that her two other children should share therein, and her husband should take a portion thereof. We get this information from that part of the appellee's brief wherein a portion of the will is set out. The appellant has contented herself with assertions in regard to the will without abstracting it.

It seems to be undisputed that E. M. Norton, the defendant herein, did not in fact select the 80 acres to be delivered over to his daughter, as was provided by the will of his wife, but permitted the daughter to make the selection herself, which she did in 1924 and possession was at that time delivered to her. The trial court found all the issues in favor of the defendant, the appellee. Upon this appeal, we are now asked to review the decision.

The appellant argues most forcefully that, according to the will of her mother, she took a vested right in the

property at the time of her mother's death; that the conduct of her father in cutting and removing timber from the land was an act of waste for which he should now be required to account to her for the value of the timber removed. She says further that the bequest was in the nature of a special grant whereby the entire estate was charged in order that she might receive the full value of this grant even at the expense of the other legatees whom she has made parties. All of these statements will have to be treated by us as bare assertions for the reason that that portion of the will that has been abstracted by appellees is apparently in contradiction of appellant's contention. The appellant has furnished no abstract to any portion of the will or other evidence sustaining the theory for which she contends and to which she devotes a large portion of her brief, as if these matters were admitted facts. The portions of the will to which our attention has been called by way of appellee's abstract and statements therefrom indicate pretty clearly, we think, that Mrs. Norton intended to constitute or make her husband a trustee to take charge of her property, pay her debts, and distribute the remainder of the property, giving to her children their respective interests. To her daughter, Georgia, an 80-acre tract was bequeathed, to be selected and delivered by Mr. Norton. The others received larger bodies of land. A part of this land which Mrs. Norton owned, she and her sister had inherited from their mother, and upon some of this land there was a mortgage. The proof also indicates that Mrs. Norton was sick continuously for a period of several years prior to her death; that there was incurred, by reason thereof, a considerable amount of debts that had to be paid. Her will contained an expressed provision that her debts should be paid. We think that the evidence indicates pretty clearly that E. M. Norton was unable to meet, personally, these obligations incurred on behalf of his wife and which may have been properly charged to him. The fact, however, that E. M. Norton may have been obligated for debts incurred on account of his wife's illness, and for her support and maintenance, under the conditions here presented, did not free her estate from the just obligations to third

parties who had a right to look to the property for settlement.

Indeed, the appellant herself seems to have pursued her case upon this same theory, and it is for that reason that she sued the other children of E. M. Norton in order that their interests in the estate might be charged with the payment of these debts and obligations rather than that the entire estate should have to account therefor. If the other two children were not sued upon this theory, then they were improperly made parties to the proceedings and should have been dismissed.

Certainly no good or useful purpose can now be served by any attempt to recapitulate the evidence in regard to the amount of timber cut from lands belonging to the estate or to determine from what particular tracts of lands any part of the timber may have been taken. We have examined all of the evidence presented and we think, according to the weight or preponderance thereof, all of the timber in controversy cut from the lands belonging to the appellant's mother, was removed in 1923 and the early part of 1924. This was prior to the time that Georgia Walker selected and had delivered to her the 80-acre tract which she received according to the will of her mother. Mr. Norton testified, as did also his brother-in-law, Mr. Roy Clarke, who married Norton's wife's half-sister and who inherited the same interest in the lands as Mrs. Norton did, that it was necessary to cut and remove the timber and sell it in order to meet the obligations upon the property and if this had not been done the entire estate might have been lost on account of these debts. Mr. Clarke and Mr. Norton seemed to have acted jointly in this matter, cutting and removing timber, making sale thereof, paying off the mortgage indebtedness on the property, an indebtedness that existed at the time their respective wives inherited the same from their mother.

There is also a strain of evidence running through this entire record that a part of the timber cut from the 80 acres of land selected by the appellant and delivered to her by her father in accordance with the provisions of

the will was removed in the course of clearing the land that it might be put into a state of cultivation.

There seems hardly a doubt at this time that when the appellant selected this particular tract of land, as she was permitted to do, she was advised by her uncle, Mr. Clarke, to choose another 80-acre tract, but she declined to accept this advice given to her prior to her choice, for the reason asserted by her that it was covered with timber and she preferred the open or cleared land.

Appellant now argues that she did not know at the time she made her choice or selection of the lands that this tract had been denuded of its valuable timber. We are not impressed with that statement for the reason stated and also for the reason that this complaint made by her, wherein she is now suing to recover the value of this timber, was filed 11 years after she had made her choice, accepted possession and lived upon the land for that length of time.

She argues now that inasmuch as her father was the executor of the will, or curator, or at least a trustee, he must account as such for the value of all this timber removed from the 80 acres of land delivered to her. She has argued that the evidence as given by both Mr. Norton and by witnesses testifying on his behalf is uncertain, not positive, and inconclusive, and for that reason the court was in error in deciding the issues against appellant.

From the foregoing it appears that the issues in this case must be determined almost entirely as questions of fact rather than matters of law affecting the rights of the parties. In the absence of proof abstracted from the evidence of witnesses or from the will itself, we must treat the removal of the timber from the lands of the appellant's mother as authorized by the provisions of the will which provided for the payment of debts from her property, or in the removal of the timber in the clearing of the lands for cultivation. Such removal, in either event, would not be waste.

While this does not dispose of the question arising out of the sale of the timber or its value, the trial court was thoroughly justified in the conclusions reached that

the net profits arising therefrom were accounted for in the payment of debts and about $700 in taxes. The contention that all these obligations should have been charged against other portions of the estate in order to relieve appellant's 80-acre tract has no foundation in fact or law on the issues presented by this appeal.

We now turn to the final contention made by the appellant that the appellee's accounting at this time is wholly unsatisfactory; that witnesses on behalf of the appellee gave testimony indicating that they could not now be certain either as to the amount of timber removed or the date of removal. Perhaps the sole answer to this contention should be that if after a lapse of 11 years all or any of the witnesses remembered exactly what had been done so long before, the amount of timber cut, the particular tracts from which it had been removed, the nature and kind of timber, and value thereof, such minute recollections would be so contrary to ordinary experience and general observation as to excite a strong suspicion as to the truthfulness of such evidence. Indeed, if after this great length of time one must be charged with minute details and, upon failing to remember, suffer judgment to be rendered against him, then certainly one who would not recognize the binding effect of conscience would always have a very superior advantage over his opponent.

Perhaps before stating our conclusions, we should add to the facts stated that we are advised by additional abstract of the appellees that Mr. Norton who was named executor was authorized to act without bond; that several years ago he filed settlement of the estate; that the appellant filed exceptions thereto, and that from the judgment of the probate court, an appeal was taken to the circuit court. We are not advised as to the final result of this litigation. Attention is called to these particular facts in order that it may be seen and determined that this proceeding is not one to falsify and surcharge the settlement, but seems rather to be a suit for the construction of a will which is not set forth or abstracted in any particular and for an accounting of matters that have been perhaps disposed of in the probate court or,

if not, then such as were permitted to lie dormant for a period of 11 years before the institution of this suit.

The record in this case does not support a contention that there has been an open or continuous recognition of a trust since the delivery to Mrs. Walker of the 80-acre tract of land. Indeed, there is every indication to the effect that there has been no continuing trust, nor any recognition of one. We must and do recognize the rule that, if circumstances exist for which there may reasonably be presumed a continuation or unbroken existence of trust relations, no length of time will bar the *cestui que trust* from a right to an accounting. 4 Pomeroy's Equity Juris., par. 1449.

We have just called attention to the fact that the appellant has argued that evidence of all parties is now unsatisfactory. Certainly the appellant must have expected such a condition to arise and this court has already discussed that kind of a condition in the very early cases of *Brinkley* v. *Willis,* 22 Ark. 1, and *Martin* v. *Campbell,* 35 Ark. 137. From these cases a general rule may be announced as digested therefrom, that whenever an action is brought in equity to compel a personal representative or other trustee to render an account of the funds coming into his hands, the court will, irrespective of any statute of limitations, take into consideration the lapse of time in determining whether the complainant is entitled to equitable relief, and will refuse to order an accounting if the complainant has been guilty of such laches as to indicate bad faith, or to render it impossible or difficult for the court to do justice between the parties. We think this conclusion is justified and there should be added, that the rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible. Such announcement was restated in *Hammond* v. *Hopkins,* 143 U. S. 224, 12 S. Ct. 418, 36 L. Ed. 134; *Patterson* v. *Hewitt,* 195 U. S. 309, 25 S. Ct. 35, 49 L. Ed. 214.

This court is committed to the rule that long and unreasonable delays wherein prejudice has resulted by reason of change of conditions or loss of evidence, laches may rightfully be invoked against one so neglecting his alleged rights. *Norfleet* v. *Hampson,* 137 Ark. 600, 209 S. W. 651; *Casey* v. *Trout,* 114 Ark. 359, 170 S. W. 75; *Walker-Lucas Hudson Oil Co.* v. *Hudson,* 168 Ark. 1098, 272 S. W. 836; *City of Jonesboro* v. *Montague,* 143 Ark. 13, 219 S. W. 309, are illustrative of conditions wherein delay and changed conditions work an estoppel.

The foregoing discussion disposes of all the questions determinative of the rights of the parties. Other matters are of such minor importance that they do not warrant further consideration. The conclusion necessarily is that the decree must be affirmed.