HOPE *v.* AMERICAN BONDING COMPANY.

4-6028                               143 S. W. 2d 193

Opinion delivered September 30, 1940.

*Harry C. Robinson* and *L. A. Hardin,* for appellant.

*Rose, Loughborough, Dobyns & House* and *C. T. Cotham,* for appellees.

BAKER, J. The plaintiffs in this case filed a suit against American Bonding Company, and Grover S. Jernigan, Bank Commissioner. The Bank Commissioner was sued because he had charge of the Community Bank & Trust Company of Hot Springs, Arkansas, in the matter of its liquidation.

According to the complaint the said bank had been appointed as guardian or curator of W. T. Hope, as an insane person and under such appointment had executed a statutory bond in the sum of $10,000.

Its first surety was the Home Accident Insurance Company, but that company later became insolvent and on the 5th of January, 1931, a new bond was given executed by American Bonding Company, as surety. Community Bank & Trust Company, without authority or order from the probate court of Garland county, loaned $3,000 of its ward's money to Bertha J. Busch. This was part of an $18,000 loan, all of which was secured by a deed of trust on property located in Hot Springs, Arkansas.

It is further alleged that in November, 1931, the bank became insolvent. In December following J. O. Langley was appointed guardian or curator in succession and took charge of the property belonging to W. T. Hope, incompetent.

It was further alleged that the last named guardian filed his final statement on June 17, 1936, and his ac-

count was found to be correct, duly approved, and said guardian was discharged by the Garland county probate judge on July 15, 1936; that in said final account there was shown to be a loss of $1,500 of the $3,000 which had been loaned to Mrs. Busch.

The plaintiffs in this case, appellants here, sued as the only heirs at law of the said William T. Hope, who died intestate. The suit was for the $1,500 alleged to have been lost. They were seeking to recover against the Community Bank & Trust Company, as principal and American Bonding Company, as surety. They were asking also for interest upon the $3,000 at the rate of 6 per cent. per annum from the 12th day of April, 1930, to date of trial. There was an alleged liability against the bond from date of unauthorized loan. It was also alleged that no interest was ever paid on the Busch loan and further that this fact was fraudulently concealed from the probate court when the Bank Commissioner filed his report in the probate court in 1932.

Further, that W. T. Hope, an incompetent, was not advised and that his mental condition was such that he could not have ascertained the fraudulent concealment of the true value of the Busch notes and that said fraudulent concealment was not ascertained by the plaintiffs until after the death of Hope in June, 1936.

There was further allegation that the plaintiffs are entitled to have the account of the Bank & Trust Company approved 1932, surcharged so that the amount of loss by reason of the Busch loans including interest at 6 per cent. from April 30, 1930, to date, might be recovered.

The prayer was to recover the sum of $1,500 and interest on the $3,000. The American Bonding Company filed a demurrer alleging that the complaint did not state facts sufficient to constitute a cause of action. It also filed an answer and a motion to dismiss and a cross-complaint against the insolvent bank praying for a recovery against it of any such sums as it might have to pay over to plaintiffs, and also that the money in

the hands or possession of the Bank Commissioner be impounded and held until the termination of the suit.

The answer of the bonding company set out in some detail facts in relation to the failure of the bank and its liquidation, the effect of advertisements of orders of the chancery court requiring claims to be filed within one year and the disbursement of assets coming into the Bank Commissioner's hands, and payment of approved claims.

It was pleaded further that it was a duty of the plaintiffs to file proper claim within time fixed by court order and the law, and plaintiffs having failed to do this, their claims were barred. The failure and neglect to allege proper facts in relation thereto, became the basis for the demurrer and motion to dismiss.

It was also pleaded that upon final settlement by Langley, last guardian or curator in succession, he delivered over to plaintiffs and they accepted said notes and they receipted therefor in full, without objection to the settlement or exception thereto. It was also pleaded this settlement made by the guardian or curator was duly approved and confirmed by the probate court, and from its judgment of confirmation there was no appeal, nor was there any allegation in plaintiff's complaint alleging any matter or reason for the setting aside or modification of the court's order and judgment. The defense pleaded not only the settlement, but, under the facts set out, accord and satisfaction, bar of the statute, estoppel and laches. The foregoing statement does not cover all of the pleadings filed by all of the parties, but if it be found necessary to mention others than those set forth above, the effect of same will be found in the discussion.

The widely divergent theories of the two appellees appear somewhat contradictory one with another, making it necessary to discuss the purported liability of the insolvent bank separately from that of the surety upon its bond. It is the theory of the Bank Commissioner that the claimants have waited too long to make claim or sue, and that the claim on this account is barred by

the statute of limitations and by laches. While the surety contends that inasmuch as plaintiff accepted the Busch notes for $3,000 secured by deed of trust, until the deed of trust be foreclosed and property be sold, the amount of actual loss can not be found or fixed, and such foreclosure not having taken place, the actual loss can not legally be determined, and the suit is, therefore, premature.

Let it be understood that matters or allegations set forth in the answer of the Bank Commissioner and the surety upon its bond are not regarded as conclusions of the matters, but tend at least to show and emphasize certain deficiencies in the complaint. They furnish concrete examples of necessarily implied abstract matters involved. These conflicting theories make it necessary that we discuss separately matters suggested as defenses by the demurrers and motion to dismiss.

We prefer to discuss, first, plaintiff's right to recover against the bank. Claims against insolvent banks must be filed within the time fixed by law. Section 54, act 113 of Acts of 1913, as amended by § 5 of act 627 of the Acts of 1923, governs and regulates the filing of claims and provides that the creditor shall present his claim to the Bank Commissioner at the place and time fixed by the commissioner in a legal notice.

It also provides that no claim shall be allowed unless proof thereof shall have been presented to the commissioner within one year from the date he takes over the assets of the bank. (Section 768, Pope's Digest.)

The plaintiff pleads that the bank became insolvent in March, 1931, and that Langley was appointed as guardian or curator in succession in December of that year. There was no contention that any claim was ever filed with the Bank Commissioner nor is there any matter alleged in the complaint showing or giving any reason why it was not filed, nor why the bar of the statute did not attach. Under such conditions the demurrer was sufficient to raise the question of limitations. *Sullivan* v. *Hadley,* 16 Ark. 129; *Lawson* v. *Badgett,* 20 Ark. 195; *Trapnall* v. *Burton,* 24 Ark. 371; *Collins*

v. *Mack*, 31 Ark. 684; *St. L. I. M. & So. Ry. Co.* v. *Brown*, 49 Ark. 253, 4 S. W. 781.

According to the foregoing authorities we think the claim against the bank was barred beyond question when this suit was filed on March 23, 1939.

Other cogent reasons argued and set forth in the briefs might be discussed, but such discussion would tend only to add to the length of this opinion without serving a useful purpose. We proceed, therefore, to comment on liability of the surety upon the bank's bond. We pretermit a discussion of the possible discharge of the surety arising out of the neglect and failure to make proper claim in due time against the bank, as principal.

This alleged claim arises, not out of the loss or destruction of any property, but is attributable solely to a depreciation of the value of the securities held. Such conclusion is the only one justified by plaintiff's pleadings. They show that all of the assets belonging to the incompetent were delivered by the Bank Commissioner to Langley, the bank's successor, and that as to this property in dispute, Langley delivered the same in kind to plaintiffs, who, as we have already seen, accepted same and receipted therefor in full. The fact that Langley and the plaintiffs may have regarded the security insufficient to pay $1,500 of the $3,000 and interest thereon does not necessarily create a liability against the surety upon the bank's bond. Upon this point we are not even prepared to concede that the surety may be right in suggesting that there is a possible liability if a loss be shown upon foreclosure of the deed of trust.

It is true, the loan was not authorized by proper order of the court and on this account was illegal when made, and the bank and its surety were responsible therefor, but several reasons have been suggested indicating an end of that responsibility.

Langley, the new guardian or curator, accepted these notes at face value and accounted for them as worth the amount until about the time of his last settlement.

It is true, the value of the property might have been impaired by reason of the depression prior to the time of Langley's appointment, but if so that fact was not alleged and may have been impossible of ascertainment. There is reason to believe that the doubtful value of the security was a matter of speculation when Langley filed his final settlement and the plaintiffs received the three notes. After the notes came into their possession they held them nearly three years before institution of their suit.

They, no doubt, knew at the time that, in the orderly course of events, the administration of the affairs of the insolvent bank had been completed, or, if not, that no claim could then be filed or lodged against it, and that, if the surety had to pay at that time, that by reason of the long delay of Langley whose conduct was unequivocally approved by them, such surety could recover from said bank no part of its liability.

It is shown, or at least argued in the briefs, that such delay had occasioned a substantial loss, inasmuch as the bank had paid approximately 80 per cent. dividend. It is true that all these facts did not appear from the complaint demurred to, but there are necessary inferences arising out of the fact that there was an insolvent bank in liquidation whose liability was asserted years after its assets could in no manner be reached either by the plaintiffs or by the bank's co-defendant, its surety upon the bond. There is certainly no implication or inference in law, that there were no assets and that no prejudice could arise by the waiver of the claim.

The conduct of Langley, approved by the plaintiffs, amounted to such waiver. Under conditions similar to those stated herein, we have held there was no liability. *Fidelity Deposit Co. of Maryland* v. *Meyer, Guardian,* 197 Ark. 42, 121 S. W. 2d 873, also *Meyer* v. *Fidelity and Deposit Co. of Maryland,* 197 Ark. 418, 122 S. W. 2d 586.

Langley and the plaintiffs have delayed making claim for such length of time that there is now a change in conditions. One of these changed conditions is the assertedly impaired value of the security. Another is

what amounts to a waiver of the claim against the insolvent bank. Such conduct furnishes a striking example to invoke the doctrine of laches, besides, there seems every reason to hold that the delivery of these assets and their acceptance thereof without objection operated as an accord and satisfaction. *Walker* v. *Norton, Executor,* 199 Ark. 593, 135 S. W. 2d 315; same citation p. 600 on estoppel.

Further comment would be burdensome rather than beneficial. It follows the trial court was correct in the ruling made.

Affirmed.