EDWARDS *v.* THE CARTER OIL COMPANY.

5-887                                                288 S. W. 2d 954

Opinion delivered April 9, 1956.

*L. B. Smead, W. R. McHaney* and *Melvin T. Chambers,* for appellant.

*Gaughan, McClellan & Laney,* for appellee.

SAM ROBINSON, Associate Justice. This action involves the ownership of part of the minerals in 65 acres of land. It is the practice in oil fields to refer to the ownership of a percentage of the minerals in a given tract of land as so many "acres of minerals," or "mineral acres." As an example, if a person owns 25/100ths of the minerals in 100 acres, he is regarded as owning 25 "mineral acres," or 25 "acres of minerals." We will follow that practice in this case.

A grantor's act in purporting to convey 16.1 acres of minerals and to reserve 10 acres of minerals, when he had title to only 11.8 mineral acres, gives rise to this cause of action. The Chancellor held that appellants and appellee take the same percentage in the 11.8 acres of minerals they would have had in the 26.1 acres of minerals if there had been that many.

Jewel Edwards, J. M. Passwater, and the widow and son of L. L. McDonald have appealed, contending that they are the owners of 9 acres of minerals; and The Carter Oil Company has cross-appealed, contending that under the deed, it is entitled to 16.1 acres of minerals, but since only 11.8 acres are available, it is entitled to that acreage.

Ben Wheeler died intestate, leaving twelve heirs and 65 acres of land. Five of the heirs conveyed one-half of their interest in the minerals to Jack Machen; later, four of these five heirs, along with two others, conveyed one-half of their interest in the minerals to L. L. McDonald for himself and as trustee for Jewel Edwards and J. M. Passwater. The heirs, Wesley Wheeler and Buck Wheeler, grantors in the deed to McDonald, had previously conveyed their interest to Wade Kitchens. Later, a suit was filed by the heirs to cancel the deed to McDonald, alleging that it was fraudulently obtained. That suit was settled and a consent degree was entered. In order to effectuate the settlement, L. L. McDonald executed a deed to his attorney, W. D. McKay, to 26.1 mineral acres; McKay, in turn, executed a deed to 16.1 mineral acres to O. D. Boreing, trustee for the Wheeler heirs. The deed specifically reserves 10 acres in McKay. McKay then executed deeds totaling 9 acres of minerals to McDonald, Edwards and Passwater (this apparently left McKay with one acre of minerals and, later, he gave a quitclaim deed to The Carter Oil Company). Standard Oil Company then acquired the interest of the Wheeler heirs and Machen. Several years later, this interest was transferred by the Standard Oil Company to The Carter Oil Company; later, in 1949, The Carter Oil Company brought in producing wells on the property.

Appellants Jewel Edwards, J. M. Passwater, and the widow and son of L. L. McDonald filed this suit, contending that they are owners of 9 acres of minerals. They contend that, by the deed from McKay to Boreing, 10 acres of minerals were reserved and that McKay deeded 9 acres to appellants. It appears that in the controversy between McDonald, trustee, and the Wheeler heirs, the parties reached the conclusion that McDonald had title to 26.1 mineral acres on the theory that there were only eight Wheeler heirs, whereas, in fact, there were twelve heirs; also, there was a slight miscalculation. In any event, actually McDonald never at any time had title to more than 11.8 mineral acres; this is obvious from the deeds.

The deed from McKay, trustee, to Boreing, trustee, apparently conveys 16.1 acres of minerals, and the deed further provides: "And it is the further intention to convey all interest acquired from L. L. McDonald et ux under deed dated January 29, 1938, except 10 full royalty acres, containing 65 acres, more or less." It will be noticed that the deed refers to royalty acres, however, all of the other deeds dealt with minerals. McDonald did not receive a deed from the Wheeler heirs to 26.1 acres of minerals, but the deeds from the Wheelers called for one-half of certain heirs' interest. Of course, McKay could not convey 16.1 acres of minerals, as he had title to only 11.8 acres, but all the parties thought he had title to 26.1 acres. This was a mutual mistake, obvious from the provisions of the deeds. McDonald, owner of part of the minerals, and trustee for Edwards and Passwater, attempted to convey to McKay 26.1 acres. This was done so that McKay could, in turn, convey portions of the minerals to everybody concerned, as agreed. The McDonalds, Passwater and Edwards are not now in a position to say that since a mistake was made, and there were only 11.8 acres of minerals instead of 26.1, they are to get 9 acres and the Wheeler heirs and those holding through them are to get only 1.8 acres (it will be recalled that the title to 1 acre remained in McKay).

The Carter Oil Company is not an innocent purchaser without notice. McDonald's interest in the minerals is shown in The Carter Oil Company's chain of title. In determining whether McDonald had title to enough minerals to convey to McKay 26.1 acres, the first thing to be determined was whether McDonald had a deed from all of the Wheeler heirs. An investigation would have revealed that only eight of the twelve heirs had conveyed to McDonald, and two of these heirs had previously conveyed one-half of their interest to Machen; two others had conveyed all of their interest to Kitchens. The oil company had notice of the deeds to Machen and Kitchens, and an investigation would have shown that only eight of the twelve heirs conveyed to McDonald, hence, McDonald could not have owned 26.1 mineral acres. The deed from McKay, trustee, to Boreing, trustee, attempts to convey 16.1 acres. McKay had title to only 11.8 acres; therefore, of course, he could not convey 16.1 acres. The record was sufficient to put the oil company on notice that McKay could not convey the number of acres mentioned in the deed, and a proper investigation, called for by the condition of the title, would have brought to light the fact that there had been a mutual mistake by the Wheeler heirs and McDonald, trustee. Hence, it cannot be said that the oil company was an innocent purchaser without notice. We said, in *Richards* v. *Billingslea,* 170 Ark. 1100, 282 S. W. 985: "This court has held that whatever puts a party on inquiry amounts to notice where the inquiry becomes a duty and would lead to knowledge of the requisite facts by the exercise of ordinary diligence and understanding. *Jordan* v. *Bank of Morrilton,* 168 Ark. 117, and *Walker-Lucas-Hudson Oil Co.* v. *Hudson,* 168 Ark. 1098." See also *Kellogg-Fontaine Lumber Co.* v. *Cronic,* 219 Ark. 170, 240 S. W. 2d 872; *Trinity Royalty Company, Inc.* v. *Riggins,* 199 Ark. 939, 136 S. W. 2d 473.

Affirmed on appeal and on cross-appeal.