WILSON v. NUGENT.

Opinion delivered October 17, 1927.

1. CONTRACTS—NATURE OF INSTRUMENT.—An instrument may be both a receipt and a contract.

2. EVIDENCE—VARYING WRITTEN CONTRACT BY PAROL.—Where a writing, though in the form of a receipt, embodies the elements of a contract, it is, as to the contractual part, subject to the same rules as any other contract, and is not open to a variation or contradiction by parol evidence.

3. EVIDENCE—VARYING RECEIPT BY PAROL.—Where a writing constituted both a receipt and a contract, it could be contradicted or explained by parol evidence in its character of a receipt.

4. EVIDENCE—VARYING WRITTEN CONTRACT BY PAROL.—Where a written instrument constituted both a receipt and a contract, its contractual part cannot be varied or contradicted by parol evidence.

5. REFORMATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—A written contract will not be reformed for a mistake in its terms, where the evidence of such mistake is not clear, convincing and decisive.

6. ATTORNEY AND CLIENT—WAIVER OF BREACH OF CONTRACT.—Where defendant attorney contracted with plaintiff to assist him in settling the affairs of an oil corporation, and agreed to a division of fees received, and the latter breached the contract by permitting a letter to be circulated contrary to the interest of the parties,

but defendant attorney continued to recognize plaintiff as associate counsel, *held* that defendant waived the breach.

7. NOTICE—FACTS PUTTING UPON AN INQUIRY.—Notice of facts and circumstances which would put a man of ordinary intelligence on inquiry is equivalent to all the facts that a reasonable inquiry would disclose where there is a duty to make the inquiry.

8. ATTORNEY AND CLIENT—WAIVER OF BREACH OF CONTRACT.—Where a breach of a contract for the employment of an attorney was waived by defendant, the effect of such waiver is not avoided by reason of the fact that defendant considered that it was to his best interest not to insist upon the breach.

9. ATTORNEY AND CLIENT—WAIVER OF BREACH OF CONTRACT.—Where attorneys had agreed to a division of fees for settling the affairs of an oil corporation, plaintiff attorney will be *held* to have waived his right to urge a breach of such contract by defendant attorney, because of latter's having placed money which plaintiff alleged was in payment of their fee into another fund, where plaintiff acquiesced in such action.

10. ATTORNEY AND CLIENT—BREACH OF CONTRACT.—Where defendant attorney had employed plaintiff to assist him in settling an oil corporation's affairs and had agreed to a division of fees, but plaintiff breached the contract, *held* that plaintiff was not entitled to a division of fees received by defendant after actual discharge from the proceedings, although his previous breach of contract had been waived.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

STATEMENT OF FACTS.

Anthony P. Nugent brought this suit in equity against Albert L. Wilson and others to recover the sum of $10,000, alleged to be due him in the settlement of attorney's fees between said Nugent and Wilson. The complaint alleges that Nugent and Wilson were associate counsel for the Oil Fields Corporation and that the amount involved in this lawsuit grew out of their management of the litigation and affairs of said corporation; that said account is based on a written contract between the parties, and that the account itself is long, complicated, intricate and involved. The prayer of the complaint is that a master be appointed to state an account between Nugent and Wilson, and that the former have

judgment upon the final hearing of the case in the sum of $10,000, and such other sums as the court may find he may be entitled to under the contract.

Wilson denied that anything was due Nugent under the contract, and also asked that the contract be reformed so as to express the mutual agreement of the parties in making it which had not been fully stated in the written contract.

The present suit is based upon a contract between Nugent and Wilson, which reads as follows:

"$750.                                November 8, 1924.

"Received of Anthony P. Nugent, of Kansas City, Missouri, the sum of seven hundred and fifty dollars as an advance to the defense fund mentioned in my circular letter of August 1, 1924, to the shareholders of the Oil Fields Corporation, which amount I hereby agree to refund to him out of the first money that shall be contributed by the said shareholders to said fund, from this date, and, as further consideration for said advance to defense fund, and as compensation for the services of said Anthony P. Nugent and of the law firm of Hutchins, Abbott, Allday & Murphy, of El Dorado, Arkansas, in assisting me in all litigation involving the said Oil Fields Corporation and the recovery of its property, I hereby agree to divide the compensation justly receivable by me, one-third to said Anthony P. Nugent, one-third to said Hutchins, Abbott, Allday & Murphy, and one-third to himself.  I further agree to keep an accurate record of all contributions to said defense fund and to account to the contributors for the same, and that said records shall be open to the inspection of said assistant at any time.

(Signed)    "Albert L. Wilson."

The present suit is one among several others that grew out of the management of the affairs of the Oil Fields Corporation, which was organized for the purpose of dealing in oil and gas leases and exploring lands for the purpose of discovering oil and gas.  Albert L. Wilson was a director and also was attorney for said Oil Fields Corporation.  As attorney for said corporation he was

to receive a salary of $12,000 per annum, payable in monthly installments of $1,000 at the end of each month. Said corporation was organized for the purpose of dealing in oil and gas leases in the State of Arkansas, and its business was chiefly confined to Ouachita and Union counties. Finally its affairs became involved to such an extent that a receiver for its property was appointed by the chancery court of Ouachita County, Arkansas. Bankruptcy proceedings were also instituted against the corporation in the Federal court at Texarkana, Arkansas. Something like ten thousand persons were interested in the oil and gas leases of the corporation, and consequently were interested in its affairs. These persons were scattered all over the country, and it cost about $750 to communicate with them by letter. After the receivership and bankruptcy proceedings were instituted, it became necessary for Albert L. Wilson, as attorney for the corporation, to communicate with those interested in the property and affairs of the corporation, and to secure what he called a "defense fund" for the purpose of preserving the property of said corporation and of relieving its affairs and property from the Federal bankruptcy court and receivership proceedings in the State chancery court.

Wilson did not have any money, and applied to R. M. Hutchins, of the firm of Hutchins, Abbott, Allday & Murphy, to assist him as attorneys in said bankruptcy and receivership proceedings, and also to advance him such a sum of money as might be necessary to communicate with those interested in the affairs and property of the corporation. Hutchins was unable to furnish financial assistance, but secured Anthony P. Nugent to advance the sum of $750 as a part of the defense fund above referred to. The agreement which is the basis of this suit resulted from the negotiations between Wilson, Hutchins and Nugent. Nugent advanced the sum of $750 provided in said contract, and this amount was refunded to him by Wilson after he had secured that amount by contributions from those interested as stockholders of the

Oil Fields Corporation. In December and January following the execution of the contract, Wilson called upon Nugent to advance the cost of another circular letter. This Nugent failed to do, on the ground that he did not have the money at that time.

In February, 1925, Paul L. Flanery went to the office of Anthony P. Nugent and got him to write a letter which reads as follows:

"Anthony P. Nugent,
    Attorney at Law,
1102 Commerce Bldg.,
    Kansas City, Mo.
                    "February 1, 1925.

"To whom it may concern:

"This will introduce Mr. Paul L. Flanery, of the Flanery Petroleum Company, a client of mine, who owns fifteen hundred shares in the Oil Fields Corporation, which is a consolidation of the Robert Edmonds, Richard Rader and Business Men's Royalty Syndicates.

"Mr. Flanery came to me with a plan which he will explain to you, whereby he and his associates owning these shares could protect their holdings in the above named syndicates. They believe that our side of the fight is right.

"I believe that Mr. Flanery has solved a problem whereby his associates, by being represented as one, will in time win their case. We all realize that we can do more as a unit consisting of the different shareholders than by fighting separately.

"You know I am familiar with the standing of the Oil Fields Corporation, and, as it has assets which are at the present time very substantial and a production that is earning a good revenue each month, I see no reason why, when we win our case, we shall not be able to save the original investment and make it a going concern.

"Any further information will be gladly furnished upon written request.

"Yours very respectfully,
                    "Anthony P. Nugent."

This letter was signed by Nugent and left on his desk, with directions to his stenographer not to deliver it to Flanery until he had secured its approval by Wilson and his other associates in the management of the Oil Fields Corporation at El Dorado, Arkansas. Flanery went to the office of Nugent, and secured said letter, with the signature of Nugent, from the latter's secretary, without his knowledge or consent.

Wilson refused to approve the employment of Flanery as indicated in the letter, and Nugent at once took steps to secure the letter from Flanery. He was not able to secure the letter for some time, and, in the meantime, Flanery had used it to read to stockholders of the Oil Fields Corporation to urge them to agree to his proposal. This caused some of the stockholders of the Oil Fields Corporation to lose confidence in Wilson, and caused him trouble and expense in overcoming the impression made by Flanery. Wilson continued to recognize Nugent as his associate counsel with regard to the affairs of said Oil Fields Corporation by signing his name to various pleadings of said corporation, the last of which was filed on the 22d day of June, 1925, and by consulting about the pending litigation.

Other evidence will be stated and discussed under appropriate headings in the opinion.

On the 4th day of October, 1926, the chancellor rendered a final decree in the case. The chancellor found that the written contract between the parties of the date of November 8, 1924, was plain, complete and unambiguous when read in connection with the circular letter mentioned in it; that said contract provides that Nugent should receive one-third of the compensation received by Wilson from the litigation involving the Oil Fields Corporation and the recovery of its property then in the hands of the receiver; that the compensation received by Wilson as salary was $1,000 per month; that Nugent was entitled to one-third of this amount from November 8, 1924, the date of the contract, until June 22, 1925, the date of his discharge from the proceedings. The chan-

cery court further found that a fee of $5,000 which had
been allowed Wilson by the Ouachita Chancery court in
the recceiverhip case was not additional compensation,
but that it was properly deposited by Wilson in the
defense fund of said corporation, and that Nugent was
not entitled to any part of it. The court found that the
letter signed by Nugent of the date of February 1, 1925,
amounted to a breach of the contract, whether it was
delivered by him to Flanery or not; that its contents and
the use by Flanery was of such a nature as to justify
Wilson in discharging Nugent, and that Wilson was
estopped from pleading a breach of the contract prior to
June 22, 1925, because he recognized Nugent as his
associate counsel up to that time. It was therefore
decreed that Nugent should receive from Wilson the sum
of $2,488.87, which represented one-third of Wilson's
compensation from November 8, 1924, until June 22,
1925. To reverse that decree Wilson has duly prose-
cuted an appeal to this court.

*Albert L. Wilson*, for appellant.

*Mahony, Yocum & Saye,* for appellee.

HART, C. J., (after stating the facts). It is earnestly
insisted that the chancery court erred in holding the
written instrument of November 8, 1924, signed by Albert
L. Wilson, to be a contract instead of a receipt merely.
The same instrument may be a receipt and a contract.
Where a writing, though in form of a receipt, embodies
the elements of a contract, it is in its nature subject to the
same rules as any other contract and is not open to
variation or contradiction by parol evidence. 22 C. J.
1138 and cases cited; *Seitz* v. *Brewers' Refrigerating
Machine Co.,* 141 U. S. 510, 12 S. Ct. 46, 35 L. ed. 837;
and *Huckins Hotels* v. *Smith,* 151 Ark. 167, 235 S. W. 787.
This is in application of the well-settled rule that, when
a written instrument contains such terms as import a
complete obligation, which is definite and unambiguous,
it is conclusively presumed that the whole agreement of
the parties, and the extent and manner of their under-
taking, were reduced to writing. In such cases the

instrument is in the nature of a contract and cannot be varied or contradicted by parol evidence, in the absence of fraud or mistake.

In the application of these principles to the writing under consideration, it may be said that Wilson might have contradicted the receipt feature of the instrument by parol evidence that the payment of $750 was not made in whole or in part. However, the contract feature of the instrument was complete in itself, and contained definite terms and bound the parties to mutual agreements. In this respect the instrument was contractual in its nature and stands upon the footing of other written contracts, and cannot be varied or contradicted by parol evidence. Hence it was not proper to show that one of the terms of the contract was that Wilson should deduct his living expenses before Nugent should receive one-third of his compensation. This would simply have had the effect of varying or altering the terms of the contract, which the parties had reduced to writing and which had been signed by the party sought to be charged.

It is insisted by Wilson, however, that the contract should be reformed so as to show that he was entitled to deduct his living expenses from the salary due him by the corporation before Nugent and the firm of Hutchins, Abbott, Allday & Murphy were entitled to receive anything. In this connection it may be stated that the Hutchins firm has been settled with by compromise and their rights are not involved in this appeal.

It is well settled in this State that evidence justifying the reformation of a written instrument must be clear, convincing and decisive. *Welch* v. *Welch,* 132 Ark. 227, 200 S. W. 139, and cases cited; and *Meador* v. *Weathers,* 167 Ark. 264, 267 S. W. 787. Tested by this rule, the chancellor was correct in holding that the written contract should not be reformed. While the testimony of Wilson made out a case for himself, it was contradicted by the testimony of Nugent and of two members of the Hutchins firm. Hence we are of the opinion that the court did not err in refusing to reform the contract.

The court held that the letter of February 1, 1925, signed by Nugent and delivered by his secretary to Flanery, constituted a breach of the contract, but that Wilson waived the breach by recognizing the contract as still in force after the letter had been written. In so far as Wilson is concerned, we are only required to deal with the latter phase of the question. It is a well settled principle of law, that, where one party, with knowledge of a breach of a contract by the other, recognizes the contract as still in force, he will be held to have waived a breach thereof. *Alfred Bennett Lumber Co.* v. *Walnut Lake Cypress Co.,* 105 Ark. 421, 151 S. W. 275; *Clear Creek Oil & Gas Co.* v. *Brunk,* 160 Ark. 574, 225 S. W. 7; *Friar* v. *Baldridge,* 91 Ark. 137, 120 S. W. 989. Tested by this well-settled principle of law, we are of the opinion that the facts in the record warranted the chancery court in holding that Wilson waived the breach of the contract committed by Nugent by allowing the letter just referred to to be delivered to Flanery. After this letter had been delivered to Flanery and used by him to the injury of Wilson and the other stockholders of the Oil Fields Corporation, Wilson allowed Nugent to continue as associate counsel in the management of the affairs of said corporation and recognized him as such associate counsel. This he did by writing him letters concerning the conduct of the litigation then in progress, by consulting him about the conduct and management of that litigation and the other affairs of the corporation, and by signing his name to pleadings in the pending litigation.

Wilson seeks to escape responsibility for so doing on two grounds. In the first place, he insists that he had no knowledge that Nugent had committed this breach of the contract at the time he wrote him the letters and consulted him about the management of the litigation and the other affairs of the Oil Fields Corporation. It is a well-settled principle of law that notice of facts and circumstances which would put a man of ordinary intelligence on inquiry is equivalent to knowledge of all the facts that a reasonable inquiry would disclose where there is a duty

to make the inquiry. In short, where one has sufficient information to lead him to a fact, he shall be deemed cognizant of it. *Waller* v. *Dansby,* 145 Ark. 306, 224 S. W. 615; *Jordan* v. *Bank of Morrilton,* 168 Ark. 117, 269 S. W. 53; *Walker-Lucas-Hudson Oil Co.* v. *Hudson,* 168 Ark. 1098, 272 S. W. 836; and *Richards* v. *Billingslea,* 170 Ark. 1100, 282 S. W. 985.

Wilson admits, in his own testimony, that he had suspicioned the loyalty and good faith of Nugent before the letter in question was written, and that, shortly after it was written, he had knowledge of its contents, and believed that Nugent was acting in bad faith towards himself and the other stockholders of the Oil Fields Corporation. Wilson then could have ascertained by inquiry from Nugent the circumstances under which Flanery secured Nugent's signature to the letter and his bad faith in taking the letter away from Nugent's office during the latter's absence. It will be remembered that Nugent testified that he had told Flanery that the letter should not be delivered to him until he had received the sanction of Wilson and the Hutchins firm to use the letter. If Wilson then had doubted the good faith of Nugent and the truth of his statement in regard to the letter, he could have found out all about the matter by inquiry from the Hutchins firm and other sources at his command. Whether he believed Nugent guilty of bad faith or not in the matter, he knew the result of his action, for the letter was written and secured by Flanery, and he should have then declared the contract to be at an end, and his subsequent conduct in writing to Nugent about the conduct of the litigation of the Oil Fields Corporation and his recognition of him as associate counsel by consulting about the manner and conduct of the litigation will be deemed in law a waiver of such breach of the contract.

Another ground relied upon by Wilson to relieve him from a waiver of the breach of the contract is that he feared, if he discharged Nugent at that time, it would injuriously affect himself and other stockholders in the

conduct of the litigation then pending in the State and Federal courts. This constitutes no excuse. It will be remembered that Wilson was out of money, and that the employment of Nugent was largely due to the fact that he advanced sufficient money to notify the stockholders and persons interested in the oil and gas leases of the Oil Fields Corporation about the existing condition of its affairs. Wilson regarded this of such importance that he was willing to give Nugent one-third of his salary as attorney for such corporation in order to secure such advancement and to have his assistance otherwise as counsel in the case. He could not play fast and loose in the matter. He could not wait until the litigation had proceeded to a successful termination and then discharge Nugent and claim that the discharge should take effect as of a date several months prior to his actual discharge. If he thought it best to overlook what he considered a breach of the contract on the part of Nugent, he had a right to do so, and it did not make any difference what his motive was in doing so. The important thing is that he considered it best for his own interest to continue to recognize Nugent as his associate counsel, and this he had a right to do, if he thought it was to his best interest to do so, no matter what his reasons were. Therefore the chancellor was right in holding, under the facts and circumstances presented by the record, that, under the contract entered into between Wilson and Nugent, the latter was entitled to one-third of the salary received by Wilson from November 8, 1924, to June 22, 1925.

On the cross-appeal the decision of the chancellor was correct. The record shows that, during the progress of the receivership proceedings, Wilson was allowed a fee of $5,000, and Nugent claims that he should be allowed one-third of that fee under the terms of the contract. The record shows that, at the time Wilson received this fee, he insisted that it should be put in the defense fund as his contribution thereto, and he actually placed the sum in that fund, which the parties had agreed should be used to pay the living expenses of Wilson as well as

the costs of the pending litigation. Nugent allowed Wilson to do this, and, under the principles of law above announced, will be deemed to have agreed to the course pursued by Wilson in the matter. If he deemed such course of conduct on the part of Wilson to have been a breach of the contract, he should have objected at the time. He could not stand by and acquiesce in his action in the premises and afterwards claim that it was a breach of the contract and that he was entitled to one-third of the fee.

Again, it is insisted by counsel for Nugent that he should be allowed an additional fee because other amounts were earned and will be allowed to Wilson, and that, under the terms of the contract, Nugent was entitled to one-third of the entire compensation. On this branch of the case we think the chancellor was right in not allowing Nugent to share such extra compensation. As we have already seen, the chancellor held that the Flanery letter constituted a breach of contract on the part of Nugent. Such holding of the chancellor was correct. It is true that Nugent explained that the letter had been secured by Flanery during his absence and against his explicit directions in the matter. He says that he did not intend for Flanery to obtain possession of the letter until he had secured the consent of Wilson for Flanery to use the letter. This did not make any difference as to the result. By his own fault or carelessness in the matter, Nugent allowed Flanery to obtain possession of the letter and to use it injuriously to the interest of Wilson, and thereby cause some of the stockholders of the Oil Fields Corporation to lose confidence in his management of its affairs. The record shows that the affairs of the corporation had become very complicated and were very much involved in litigation, which resulted in a disagreement among the stockholders about the conduct and management of the affairs of the corporation. The stockholders were numerous, and resided in various States, and it required a circular letter to bring to their attention any matter involving their judgment. It was

necessary for them to contribute such sums of money as might be necessary for the conduct of the litigation, and this they would not be likely to do if they lost confidence in either the integrity or good judgment of Wilson in managing the affairs of the corporation and directing the course of the litigation.

The result of our views is that Nugent is not entitled to maintain his cross-appeal, and that the decree of the chancery court should be affirmed. It is so ordered.