JETER *v.* WINDLE.

5-1730                                            319 S. W. 2d 825

Opinion delivered January 19, 1959.

[Rehearing denied February 23, 1959.]

*Sloan & Sloan,* for appellant.

*Douglas Bradley,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellants, (Jeters) owners, constructed six adjoining business houses, or units, in a new shopping area (called Jeter Park) in the city of Jonesboro and on August 8, 1957 they leased one of these buildings to appellants, Mounce and Pinchback, for a term of five years. An adjoining building, or unit, was leased by them to appellees, Windles. The lease to Mounce and Pinchback contained this provision: ". . . It is understood between the parties that the property is rented by the Lessee for the purpose of carrying on or conducting drug store business, and such business is to be conducted in full compliance with all city ordinances and laws applicable thereto, and the Lessee agrees not to use said building for any

other purpose without first obtaining the written consent of the Lessors so to do.''

The lease from the Jeters to the Windles contained a similar provision: ''. . . the property is rented by the Lessees for the purpose of carrying on or conducting Cafe business, . . . and the Lessees agree not to use said building for any other purpose without first obtaining the written consent of the Lessors so to do . . .''

Some time after Mounce and Pinchback had occupied their leased building, they began operating, along with their drug business, a soda fountain and in addition, a grill dispensing food. At this point the Windles brought the present suit seeking to enjoin the Jeters, as owners and lessors, from permitting Mounce and Pinchback to operate a soda fountain and grill in conjunction with their drug store, and to enjoin Mounce and Pinchback from operating the soda fountain and grill, and in addition, sought substantial damages against appellants. The trial court held that the Jeters were bound by an oral covenant and agreement alleged to have been made prior to the leases not to permit competition by the drug store, and further held that Mounce and Pinchback had leased the drug store premises with notice of such equity and were likewise bound, and entered a decree enjoining appellants from permitting or conducting a grill or soda fountain in connection with the drug store and allowing the Windles damages in amount of $1,321.88 from the Jeters. This appeal followed.

At the trial it appears that the Windles were permitted to testify relative to certain preliminary negotiations leading up to the written leases. Paul Windle testified that in May 1957, prior to the execution of the leases, he made a verbal agreement with Winston Jeter to lease the building adjoining the drug store for cafe purposes, on condition and assurance, that no food or drink service would be allowed in any other of the six units of the shopping center in competition with Windle. Gladys Windle testified that in July 1957 (prior to the

date of the lease) she learned from W. R. Mounce that the drug store planned to install and operate a fountain and grill. She then complained to Winston Jeter and requested him to inform Mounce that no grill or soda fountain would be permitted. Thereafter, on July 15, 1957, Winston Jeter wrote a letter to Mounce containing these recitals: ". . . we have talked it over with all parties concerned, and we wish you to know we cannot lease the drug store building to anyone who wishes to operate a grill or soda fountain in connection, as per our understanding at start.

"We do not wish any conflict between the two stores, and wish to protect the investment of each . . ."

Following receipt of this letter Mounce (one of the owners and operators of Central Drug Store) informed the Jeters that they would not lease the building which they desired unless they were permitted to operate a fountain and grill in connection with their drug store. The Jeters then informed Gladys Windle, one of the appellees, that they had changed their minds and would not "police" the businesses. Thereafter, on July 23rd, the Jeters forwarded a draft of the lease contract with the Windles to them for their signature, along with a copy of the proposed drug store lease for their information. When the Windles discovered that the drug store lease above did not contain a clause prohibiting competition in food and drink, Gladys Windle consulted her attorney who prepared an additional clause to be embodied in the drug store lease above as follows: ". . . Lessors shall prohibit the use of any other part of the property described above for sale or dispensing of food or drinks to be consumed on the premises." The Windles admitted that the Jeters refused to accept the suggested clause.

For reversal of the decree appellants say that, "The cafe and drug store leases are completely integrated written agreements, and cannot be varied by parol evidence of a covenant not to permit competition by the operation of a fountain and grill, since the leases deal with

the use to be made of the premises." After a careful review, we have concluded that appellant's contention should be sustained.

No rule of law appears to be better settled than that where a written contract is plain, unambiguous and complete in its terms, parol evidence may not be permitted to contradict, vary or add to any of its provisions. In *Cox* v. *Smith*, 99 Ark. 218, 138 S. W. 978, this court used this language: ". . . the cause of action herein sued on is founded upon an instrument which is a written contract, . . . The rule of law that is applicable to all written instruments . . . is, that parol testimony is inadmissible to contradict, vary or add to its terms. . . . where the written contract is plain, unambiguous and complete in its terms, it has been uniformly held by this court that parol evidence is not admissible to contradict or to vary or to add to any of its terms. (Citing many cases) Where the written contract is complete in its terms, it is incompetent to engraft thereon any condition by parol testimony . . . Antecedent propositions, correspondence, prior writings, as well as oral statements and representations, are deemed to be merged into the written contract which concerns the subject-matter of such antecedent negotiations when it is free of ambiguity and complete." ". . . When a written instrument contains such terms as import a complete obligation, which is definite and unambiguous, it is conclusively presumed that the whole agreement of the parties, and the extent and manner of their undertaking, were reduced to writing. In such cases, the instrument is in the nature of a contract, and cannot be varied or contradicted by parol evidence in the absence of fraud and mistake,—" *Wilson* v. *Nugent*, 174 Ark. 1115, 299 S. W. 18. We hold that all negotiations prior to the execution on August 8, 1957 of the leases involved here were merged into the written leases. In the circumstances, under the plain terms of their lease with the Jeters, Mounce and Pinchback were permitted to carry on or conduct a "drug store business." It is common knowledge that such business is not confined to operating an apothecary shop alone but that drug stores, as a general rule, fur-

nish grill and fountain service and also sell various sundries such as stationery, magazines, newspapers, etc. In a New Jersey case, *Crest Drug Store* v. *Levine,* 142 N. J. Eq. 652, 61 A. 2d 190, the court said that, "Modern drug stores are no longer apothecary shops. Where compounding of drugs is not altogether abandoned, the apothecary is but an incident, and it is common observation that the sale of drugs is negligible," and that, "It is common knowledge that many drug stores are department stores to a greater or lesser degree."

The decree is therefore reversed and the cause remanded with directions to dismiss the complaint and cross-complaint.