FARMERS COOPERATIVE ASS'N, INC. *v*
RANDALL GARRISON AND RUBY GARRISON

5-5243                                    454 S. W. 2d 644

Opinion delivered June 8, 1970

*Little & Lawrence,* for appellant.

*Putman, Davis & Bassett,* for appellees.

FRANK HOLT, Justice. This is an action by appellant to collect on two notes. Appellees, Randall Garrison and his wife, are in the poultry business. Julian Hendren is the general manager of appellant corporation, Farmers Cooperative Association. Inc., a chicken feed retailer. In the early part of 1967, Hendren, along with Kenneth Handy, a representative of Farmland Industries, Inc. (a regional supplier in which appellant has an ownership interest), approached appellees to solicit their participation in a layer-feeder program. This program was a joint project of Farmers Cooperative and Farmland Industries. On April 5, 1967, a "Feeder Contract" was consummated between appellees and appellant.

The contract provided that appellant would sell to appellees, and appellees would purchase from appellant their entire requirements of mixed feed and con-

centrates at appellant's "regular retail price or prices in effect on date of delivery* * *" Appellant also agreed to furnish appellees with 21,000 layer hens together with sufficient financing for the program. In this contract the appellees agreed to execute a promissory note to appellant for $34,650.00, covering the price of the hens and 29,800 pounds of feed, which sum plus interest was payable on demand. Without limiting the right of appellant to demand payment in full or in part at any time, the contract specified that all indebtedness evidenced by appellees' note "shall be paid in full on or before May 1, 1968." Appellant also retained by this contract the sole option to make advances to appellees, not to exceed at any one time the original sum of the note. The final provision of this contract provided that the appellees have read and presently understand the agreements and that by signing the contract they agreed to be bound by all of its terms. About a month later, or on May 9, 1967, both appellees executed to appellant a promissory note for $34,650.00. On August 2, 1967, appellee Randall Garrison executed a second note, payable on November 1, 1967, for the sum of $12,000.00.

Appellant brought suit against appellees on November 18, 1968, on the two promissory notes. The unpaid principal balances were then $34,603.93 on the initial note and $3,325.41 on the second note. Appellees answered and denied liability on the notes because of a partial failure of consideration. They asserted that it had been agreed upon between the parties that the notes would be repaid only from the proceeds of the egg production; that appellant would continue to refinance appellees with successive layer hens until such time as the egg proceeds paid the appellees' indebtedness in full; and that appellant breached the contract by refusing to so refinance. Appellees also counterclaimed for: (1) $35,155.02 loss of income because of the partial premature molt of their hens resulting from appellant's failure to promptly deliver feed; and (2) $5,299.99 as an overcharge on feed, in that appellant

breached its agreement to supply feed at competitive market prices.

Both Hendren and Handy testified, each denying that they ever made any representations or promises to refinance appellees with successive layer hens or to sell feed at competitive market prices. Over the objections of appellant, appellee Randall Garrison testified, and adduced testimony from other farmers who had been approached regarding the layer-feeder program, that Hendren and Handy persuasively represented such refinancing provisions and competitive prices as a part of the program. Garrison and his brother, who was present during part of the negotiations leading to the contractual agreement, testified that Hendren and Handy specifically promised to refinance appellees if necessary and to furnish feed at competitive prices. Garrison further testified that appellant, on occasions subsequent to the signing of the contract, reassured appellees that adjustments for feed prices would be made and that refinancing would, if necessary, be provided. There also was evidence presented that some price adjustments were in fact made between the parties.

At the conclusion of the testimony, appellant moved for a directed verdict on the two notes by reason of appellees' admission that the notes were genuine and the balances correct. This motion being denied by the trial court, appellant then requested that the jury be instructed to return a verdict for appellant on appellees' counterclaims. These instructions were refused. Other instructions were then tendered by appellant. By these instructions and others given by the court, the existence of any agreements regarding refinancing and competitive market prices for feed was presented as questions of fact. Thus the issues of appellees' liability on the two notes and of appellant's liability on the counterclaims were submitted to the jury. The jury found that appellant was entitled to recover nothing on the note [$34,650.00] dated May 9, 1967; denied appellees' claim for damages for loss of income [$35,-155.02] alleged to have resulted from a delay in the

delivery of feed; awarded appellant $3,797.54 on the note dated August 2, 1967; and found that appellees were entitled to recover $5,299.99 on their counterclaim alleging overcharge in feed prices. Appellant moved for a judgment notwithstanding the verdict on the note dated May 9, 1967. The motion was denied. From the judgment on the verdict comes this appeal.

One of appellant's contentions for reversal is: "Any testimony regarding prior or contemporaneous oral modification of the written feeder contract should not have been admitted into evidence under the doctrine of merger." We must agree.

It is a general proposition of the common law that in the absence of fraud, accident or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings and verbal agreements on the same subject. See 17 Am. Jur. 2d, Contracts, § 483; 17A C. J. S. Contracts § 381. This is simply the affirmative expression of the parol evience rule. In analyzing the present case, it is helpful to refer initially to 3 Corbin on Contracts, § 573 (1960), which begins:

> "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. This is in substance what is called the 'parol evidence rule,' a rule that scarcely deserves to be called a rule of evidence of any kind, * * *. The use of such a name for this rule has had unfortunate consequences, principally by distracting the attention from the real issues that are involved. These issues may be any one or more of the following: (1) Have the parties made a contract? (2) Is that contract void or voidable because of illegality, fraud, mistake, or any other reason? (3) Did the parties assent

> to a particular writing as the complete and accurate 'integration' of that contract?
>
> In determining these issues, or any one of them, there is no 'parol evidence rule' to be applied. On these issues, no relevant evidence, whether parol or otherwise, is excluded."

In the case at bar, it is not disputed that the parties made a contract; in fact, appellees not only admitted the existence of a contract and the alleged indebtedness, but based their defense and founded their counterclaims on an alleged breach thereof. Nor have appellees asserted that the contract is void or voidable on the basis of illegality, fraud, or mistake. However, appellees do in effect contend that the writing was not assented to as a complete "integration" of the contract and further point out that "[t]he record does not show that the court affirmatively found the feeder contract to have been integrated." We cannot agree with appellees' contenion. First of all, it is of no significance that the trial court did not affirmatively find the contract to be integrated; the burden here is on the appellees, who wish to avoid application of the parol evidence rule, to affirmatively prove that the feeder contract was not an integrated expression of the parties' agreements. *Graves* v. *Bodcaw Lbr. Co.,* 129 Ark. 354, 196 S. W. 800 (1917). Furthermore, as we view the record, the evidence adduced by appellees concerning the alleged agreements of refinancing and competitive market prices did not go to prove that the written contract was not intended as a complete integration of prior negotiations; but rather it tended to show what purportedly was the parties' actual antecedent understanding which was in variance with the clearly expressed terms of the contract. Being of this latter nature, such evidence was introduced in violation of the parol evidence rule. *Jackson County Gin Co.* v. *McCuistion,* 177 Ark. 60, 5 S. W. 2d 729 (1928). Appellees here, in effect, sought to impeach the written contract, urging that it did not express the true intent of the parties, rather than simply attempting to prove that the writing was not a complete

integration of the parties' prior agreements. See *Dunlop Tire & Rubber Corp.* v. *Thompson,* 273 F. 2d 396 (8th Cir. 1959). In the case at bar, we do not construe the parol evidence to be of the effect that the parties did not assent to the writing as the complete integration of their contract.

The parol evidence rule is one of substantive law. In 4 Williston on Contracts, § 631 (1961), this proposition is explained as follows:

> "The parol evidence rule * * * fixes the subject matter for interpretation, though not itself a rule of interpretation.
>
> * * *
>
> 'It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the "integration"), *becomes the contract of the parties.* The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was this being determined as a matter of law to be the writing itself.' "

The question now becomes: When does a writing constitute a complete integration? In *Jetter* v. *Windle,* 229 Ark. 948, 319 S. W. 2d 825 (1959), this court subscribed to the language in its earlier decision of *Wilson* v. *Nugent,* 174 Ark. 1115, 299 S. W. 18 (1927), wherein it was held:

> "[W]hen a written instrument contains such terms as *import a complete obligation, which is definite and unambiguous,* it is conclusively presumed that

the whole agreement of the parties, and the extent and manner of their undertaking, were reduced to writing."

This "face-of-the-writing" test, however, has been somewhat discredited; and other cases in this jurisdiction hold that "* * * a writing may be amplified by parol evidence of an additional term or oral understanding, simply where the writing is 'silent' on the matter." Comment, *Scope and Operation of the Parol Evidence Rule in Arkansas*, 4 Ark. L. Rev. 168, 175 (1949). Restatement of Contracts, § 240, authorizes the introduction of parol evidence:

"* * * if the agreement is not inconsistent with the integrated contract, and is made for separate consideration or is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

With these principles in mind, we are of the view that the written contract constitutes a complete integration. Therefore, appellees' proffered evidence of agreements, prior to and contemporaneous with the written contract, regarding the promised refinancing and assured competitive market prices for feed, should not have been admitted. The contract (dated April 5, 1967) clearly states that a note to be given later (the note was dated May 9, 1967) is to be payable on demand and must be paid in full on or before May 1, 1968. The contract is not silent on this point, and it is patently inconsistent with the clearly expressed terms therein to contend that credit was to be extended beyond the specified due date. See *Young* v. *Westark Production Credit Ass'n.*, 222 Ark. 55, 257 S. W. 2d 274 (1953). Moreover, this court has had occasion to hold that parol evidence is inadmissible to show that a promissory note is to be paid from the proceeds of that undertaking for which the note was executed to finance. *Atkins* v. *Garner*, 222 Ark. 470, 261 S. W. 2d 266 (1953).

As to the prices for feed, the contract is unequivocal in stating that the feed was to be sold at appellant's "regular retail price or prices in effect on date of delivery." There is no ambiguity or uncertainty here, and parol evidence which tends to show that competitive market prices were contemplated asserts, in effect, that the parties meant something other than what they said in writing. Such evidence is not admissible. *Johnson* v. *Missouri Pac. R. R. Co.,* 139 Ark. 507, 214 S. W. 17 (1919). In the case at bar, according to the written contract, the appellees attested to the fact that they read, understood, and would be bound by the terms thereof; they cannot now insist on a contract in conformity with what purportedly was their original oral understanding. *Allen* v. *Thompson,* 169 Ark. 169, 273 S. W. 396 (1925). The stability of our economic transactions and the contract law upon which they are founded demand strict application of the parol evidence rule. *Hoffman* v. *Late,* 222 Ark. 395, 260 S. W. 2d 446 (1953). See, also, Williston on Contracts, § 631.

Appellant asserts that "[t]o assume the parties agreed for appellant to lay out $34,000.00 per year for an indefinite number of years no matter what the result of the growing program was, cannot reasonably be said to be a consistent additional term." Such an assumption might not sound reasonably consistent to a lawyer or a businessman; however, to an anxious farmer it might well appear fair and realistic, especially when presented in the persuasive terms of inducement to sign an adhesion contract. Although promissory inducements cannot be asserted to vary the terms of a subsequent written contract [see *Ford* v. *Luria Steel & Trading Corp.,* 192 F. 2d 880 (8th Cir. 1951); *Crawford* v. *General Contract Corp.,* 174 F. Supp. 283 (W. D. Ark. 1959)], such inducements and the reliance which they evoke may, nonetheless, amount to fraudulent misrepresentations sufficient to avoid the contract by way of defense. See *Northwestern Rug Mfg. Co.* v. *Leftwich Hardware & Furniture Co.,* 176 Ark. 212, 2 S. W. 2d 1109 (1928).

It should be noted that we do not subscribe to

appellant's view that a failure of consideration on the contract is no defense to the suit on the initial note dated May 9, 1967. Suffice it to say that the note is representative of appellees obligation on the contract and receives its vitality from this written instrument. Appellees' damages, or a part thereof, might well have been the direct and foreseeable result of appellant's failure to have made timely delivery of feed. In these circumstances, where daily feed supplies are essential to the intended objective of the contract, prompt delivery of the required quantity is necessarily an implied term in appellant's contractual obligation. Partial failure of this consideration is a defense pro tanto. Ark. Stat. Ann. § 85-3-408 (Repl. 1961).

We must reject appellees' contention that "the entire appeal is without basis because appellant waived any objection to the court's failure to direct verdicts by requesting instructions." Our case law which might appear to support this proposition [appellees direct us to *Hankins* v. *Dooley*, 229 Ark. 316, 314 S. W. 2d 691 (1958)] is distinguishable. Briefly stated, the rule is: Where a party requests, or acquiesces in, an instruction submitting a particular issue to the jury, he is not in an attitude to thereafter complain about the jury's determination of that issue—*i. e.*, he waives his contention that the issue should have been determined by the trial court as a matter of law, or simply not determined at all. But in none of the cases upholding a waiver which we have examined was there a motion for directed verdict prior to the tendering of instructions. Further, the parol evidence rule is a matter of substantive law of which, as opposed to procedural formalities, we are less inclined to find a waiver.

In the case at bar, the appellant expressly objected to the introduction of the inadmissible parol evidence and thereafter requested a directed verdict urging the proper exclusion of such evidence. To extend this waiver doctrine to the present situation would impose upon appellant the dilemma of seeking favorable instructions at the cost of losing his right to appeal.

Reversed and remanded.