Mrs. C. T. STARLING, Individually and as Guardian of C. T. Starling, Appellant,

v.

VALMAC INDUSTRIES, INC., Appellee.

No. 78–1583.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1978.

Decided Jan. 10, 1979.

Bill R. Holloway, Lake Village, Ark., for appellant.

Rick Beard, Pine Bluff, Ark., argued, Bridges, Young, Matthews & Davis, Pine Bluff, Ark., filed brief, for appellee.

Before LAY and HENLEY, Circuit Judges, and WANGELIN, District Judge.*

HENLEY, Circuit Judge.

This is an appeal by Mrs. C. T. Starling, Guardian of her incompetent husband, C. T. Starling, from an order of the United States District Court for the Eastern District of Arkansas, dismissing plaintiff's complaint for damages for breach of contract and fraud in which complaint Valmac Industries, Inc. was named as the defendant. The dismissal came after the district court (The Honorable Oren Harris, Senior District Judge) granted a defense motion *in limine* to suppress certain parol evidence that the plaintiff intended to introduce in a scheduled and imminent jury trial. When the motion *in limine* was granted, counsel for the plaintiff indicated that he would not proceed to trial before the jury without the suppressed evidence. However, he sought and obtained leave to make a full proffer of proof to the district court, and that proffer was made. After the proffered testimony and certain exhibits were received, the trial court entered an order of dismissal and this appeal followed.

We look first at the historical facts.

Mr. and Mrs. Starling, residents of Ashley County, Arkansas, which county is located in the southwest part of the state, were married in 1964. As of that time and for some twenty years prior thereto Mr. Starling had been engaged in the business of "growing out" broiler chickens. That business involves receiving baby chicks on credit from a processing concern, feeding and medicating them on feed and medicines supplied by the processor on credit, and ultimately reselling the birds to the processor after they have attained the desired size and weight. From time to time, much money has been made in the business, and much has been lost.

The business involves substantial transportation costs borne by the processor, and for that reason distances between a processor and his respective growers constitute a significant economic factor that is taken into consideration by processors in determining whether to deal or to continue dealing with individual growers.

Prior to 1970 Mr. Starling was receiving birds, feed and medicines from the defendant, Valmac, and for many years prior to 1970 Starling had dealt with Valmac or its corporate predecessors, including a concern operating out of Greenville, Mississippi, which is a relatively short distance from Ashley County, Arkansas.[1] The relations between Mr. Starling on the one hand and Valmac and its predecessors on the other hand were mutually satisfactory.

---

* The Honorable H. Kenneth Wangelin, United States District Judge, Eastern District of Missouri, sitting by designation.

1. Ashley County is separated from the Mississippi River by Chicot County; the county seat of Chicot County is the City of Lake Village which is directly across the river from Greenville. While Ashley County is in the southeastern part of the state, we will point out that for reasons not here pertinent the County is included in the Western District of Arkansas, rather than in the Eastern District for federal judicial purposes. 28 U.S.C. § 83.

In the broiler business agreements between processors and growers are evidenced by written contracts. Each contract is geared to a particular "batch" of baby chicks placed with the grower. Ordinarily, the contract is renewed automatically "from batch to batch" unless terminated by one of the parties. A renewed contract between Valmac and a grower is signed by Valmac but is not necessarily signed by the grower who is simply given a copy of the document when a new batch of chicks is placed. Where contract terms are changed substantially, it is required that both sides sign the new contract. In its contracts Valmac specifically reserved the right to terminate or not to renew if grower performance became unsatisfactory or if severance of the relationship should be dictated by market conditions. However, Valmac's right to terminate an arrangement was not limited to the two situations just mentioned.

As of 1970 Starling conducted his broiler operation in three small, old and apparently deteriorating chicken houses which had become or were becoming unsuitable for the growing out of broilers. Mr. and Mrs. Starling, with the encouragement of Valmac, applied to the Farmers Home Administration (FHA), an agency of the United States, for a substantial loan to enable them to construct a new and modern chicken house and to have a deep water well drilled on their premises. The loan applied for amounted to $17,500, and repayment of it was to be secured by a mortgage on forty acres of land in Ashley County owned by Mr. Starling or by both Mr. and Mrs. Starling.

Naturally, before making such a loan FHA desired to know whether Mr. and Mrs. Starling were going to be able to continue to receive baby chicks to be grown out, and that question was not without interest to Mr. and Mrs. Starling. Accordingly, the lending agency and the Starlings contacted a representative of Valmac and were advised in general terms that if the Starlings continued to be satisfactory producers there was no reason to believe that Valmac would not continue to supply them with baby chicks. However, Valmac's representative, Jack Nelson, did not purport to bind his company to furnishing chicks to Mr. and Mrs. Starling as long as Valmac stayed in business, or over the life of the anticipated loan, or for any other particular length of time. The County Supervisor of FHA evidently did not consider that the Starlings or the agency had any such commitment; he did feel, however, that he could count on continued delivery of chicks by Valmac to the Starlings for a substantial period of time during the life of the loan.

The loan was made in due course, and presumably the new chicken house was built and the deep well drilled.

Things moved along smoothly from 1970 to about the middle of July, 1974 at which time Mr. Starling was the victim of an accident that left him totally and permanently disabled.[2]

After her husband's injury, Mrs. Starling undertook to continue the broiler operation and was supplied birds by Valmac until 1975, in which year she was notified that no further birds would be supplied. The reason given by Valmac for its action was the distance between the Valmac plant in Pine Bluff, Arkansas and the location of the Starling operation in Ashley County. Valmac has never contended that either Mr. or Mrs. Starling was not a satisfactory producer, and, indeed, Valmac has recognized that Mrs. Starling has been an above average operator. When Mrs. Starling was unable

---

2. Mrs. Starling, the plaintiff herein, was appointed Guardian of her husband's person and estate, and filed this suit as such. The accident involving Mr. Starling produced litigation, and a sum of money for his benefit was obtained which has been deposited in the National Bank of Commerce in El Dorado, Union County, Arkansas. The fund is being administered by the Trust Department of the Bank. The briefs before us show the "Trust Department" of the Bank as an appellant along with Mrs. Starling. Upon motion the Bank, which had been appointed Guardian of the Estate of C. T. Starling, was made a party plaintiff. Such change in parties does not affect federal jurisdiction and is immaterial as far as the issues on appeal are concerned.

to find another source from which to obtain baby chicks, she commenced this action.

In stating the facts we have viewed the case as though the defendant prior to the trial date had filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(b) with the motion being granted by the district court. This approach requires us to view the case in the light most favorable to the plaintiff, and to give her the benefit of all favorable inferences reasonably to be drawn from the record including the proffered testimony and exhibits thereto. *EEOC v. Liberty Loan Corp.*, 584 F.2d 853 (8th Cir. 1978); *United States v. Porter*, 581 F.2d 698 (8th Cir. 1978); *Bellflower v. Pennise*, 548 F.2d 776 (8th Cir. 1977).

The original complaint in the case sounded entirely in contract, it being alleged that the action of Valmac in terminating its relationship with Mrs. Starling was a breach of an alleged contract between Valmac and the Starlings. By amendment to the complaint Mrs. Starling alleged in addition that Valmac had been guilty of actionable fraud in making mala fide representations as to its future intentions that induced Mr. and Mrs. Starling to borrow money and mortgage their property to FHA and that induced FHA to make the loan.

Since this is a diversity case, the controlling substantive law is that of Arkansas. In granting the defendant's motion *in limine* the trial court felt that to introduce the oral evidence on which plaintiff intended to rely and which related to representations made on behalf of Valmac to the Starlings and to the FHA representative, and which also related to Valmac's general business practices and to understandings of those practices by people who dealt with the defendant, would be violative of the parol evidence rule which is recognized in Arkansas, as elsewhere. On the fraud issue, the district court seems to have felt that the plaintiff had nothing substantial that would show fraud on Valmac's part. However, the district court did not rule that all of the evidence relied on by plaintiff would be inadmissible in support of plaintiff's fraud theory. As stated, after the

district court announced its ruling, plaintiff declined to offer evidence under either of her theories.

Concisely stated, the parol evidence rule is that when competent parties enter into a contract and incorporate the terms of their agreement into a plain and unambiguous written instrument, parol evidence of prior negotiations, representations, promises or understandings is not admissible for the purpose of varying or contradicting the terms of the written instrument. *Crawford v. Gen. Contract Corp.*, 174 F.Supp. 283 (W.D.Ark.1959); *Farmers Coop. Ass'n v. Garrison*, 248 Ark. 948, 454 S.W.2d 644 (1976); 4 Williston on Contracts, 3d ed., § 621.

As the trial judge recognized, there are certain situations in which the parol evidence rule has no application: (1) where there is a question as to whether the parties entered into a contract of any kind; (2) where it is claimed that the contract is voidable for fraud, illegality, mistake, or similar vice; (3) where there is a question of whether the parties intended to integrate their entire agreement into the document involved in the case. *Garrison, supra,* 454 S.W.2d at 646–47, *citing* 3 Corbin on Contracts, § 573 (1960).

A party to a written contract may not introduce parol evidence of promissory representations of the other party for the purpose of varying the terms of the written instrument. But, where the promissory representations were made fraudulently for the purpose of inducing the party sought to be charged to enter into the contract, such representations may be proved by parol evidence as a defense to an action on the contract. *Garrison, supra,* 454 S.W.2d at 648–49.

Going a step further and taking into consideration the now generally accepted aphorism of Justice Holmes that the state of a man's mind is as much a fact as is the state of his stomach, we think that it may be said safely that today the Arkansas law is that a promissory representation

made in bad faith and without honest intention of performing the promise and for the purpose of inducing the promisee to enter into a contract, may be a proper foundation for a tort action for fraud and deceit where the party to whom the representation is made acts to his detriment in reliance on the representation. *See Anthony v. First Nat'l Bank of Magnolia*, 244 Ark. 1015, 431 S.W.2d 267, 274 (1968), *cited in Vickers v. Gifford-Hill & Co.*, 534 F.2d 1311, 1316 (8th Cir. 1976). We recognize, of course, that a person is not necessarily guilty of fraud merely because he fails to perform a contractual obligation or because he expresses an erroneous opinion or makes a prediction that does not come true.

We have given careful consideration to the record in this case in the light of the principles that we have stated.

We are satisfied that under the written contracts existing from time to time between Valmac and the Starlings (including contracts between Valmac and either Mr. Starling or Mrs. Starling alone) the defendant had an unqualified right not to renew contractual relations with the plaintiff or her husband, and that the district court did not err in holding that introduction of parole proof to the contrary would violate the parol evidence rule.

However, we go beyond that conclusion. Leaving the parol evidence rule, as such, out of the case and assuming that the defendant's motion *in limine* had never been filed, and that the plaintiff had been permitted to introduce all of the testimony that she wanted to introduce, and that at the conclusion of her case the defendant had elected not to introduce any evidence, we think that the district court would have been required to instruct a verdict in favor of the defendant had a motion for such relief been made.

In our estimation, the most that can be said from plaintiff's standpoint is that she and her husband had a reasonable expectation in 1970 that other things being equal they could expect to continue to receive chicks from Valmac during the fore-

seeable business future if Valmac continued in business and if Mr. and Mrs. Starling continued to be satisfactory producers. That expectation, however, did not amount to a contract right, and Mr. and Mrs. Starling had no reason to think that it did.

As to fraud, there is simply no evidence that would justify the submission of a fraud issue to a jury.

The judgment of the district court is affirmed.