**ARKANSAS POULTRY COOPERATIVE, INC., Plaintiff,**

v.

**The RED BARN SYSTEM, INC., Defendant.**

**No. F–71–C–4.**

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Dec. 28, 1971.

Crouch, Blair, Cypert & Waters, Fayetteville, Ark., for plaintiff.

Levy & Craig, Kansas City, Mo., Wade, McAllister, Wade & Burke, Fayetteville, Ark., for defendant.

OPINION

JOHN E. MILLER, Senior District Judge.

On March 3, 1971, plaintiff, Arkansas Poultry Cooperative, Inc., a corporation, organized and existing under the laws of Arkansas, commenced this action against The Red Barn System, Inc., seeking to recover on a written guaranty executed by defendant on March 19, 1967, the sum of $17,776.09, with interest and costs.

On April 5, 1971, the defendant filed its motion to quash the return of service of summons, or in lieu thereof to dismiss the action on the ground "that the defendant is a corporation organized under the laws of the State of Ohio and

was not and is not subject to service of process within the Western District of Arkansas." On June 24, 1971, the court, after a thorough consideration of the motion, found:

"The uncontroverted facts as disclosed by the affidavits and the entire record establish that the acts of the defendant are within the provisions of the Uniform Interstate and International Procedure Act, as construed by the Supreme Court of Arkansas in the case of Pennsalt Chemical Corp. v. Crown Cork & Seal Co., Inc., (1968) 244 Ark. 638, 426 S.W.2d 417, and the court is vested with personal jurisdiction over the defendant."

and overruled the motion of defendant. See, also, American Hoechst Corp. v. Bandy Laboratories, Inc., (W.D.Mo. 1971) 332 F.Supp. 241.

On July 26, 1971, following the overruling of the motion of defendant, it filed its answer in which it admitted executing the Guaranty Agreement, a copy of which was attached to plaintiff's complaint, and alleged that plaintiff breached the terms and conditions of the agreement "by failing to furnish defendant or any of its authorized representatives monthly duplicate statements in the manner more specifically described in the third paragraph of the Guaranty Agreement * * *; plaintiff further breached said agreement by failing to apply all payments received by it from Ollie's Chicken, Inc., against any liability * * * *"; that the agreement was terminated by defendant herein prior to the time of the alleged indebtedness referred to in plaintiff's complaint, and denied that plaintiff has any claim against defendant.

There is complete diversity between the parties. The amount in controversy exceeds $10,000, exclusive of interest and costs, and therefore the court has jurisdiction of the parties and the subject matter. 28 U.S.C.A. § 1332(a).

The parties engaged in rather extensive discovery procedures through interrogatories and requests for admission of facts.

On November 9, 1971, plaintiff filed its motion for summary judgment pursuant to Rule 56(a), Fed.R.Civ.P., on the ground "that the pleadings and other matters filed herein reveal conclusively that there is no genuine issue as to any material fact and that plaintiff is entitled to a judgment as a matter of law."

On December 9, 1971, defendant filed its response to the motion, in which it alleged that the Guaranty Agreement is not absolute, and that there is a genuine issue of material fact as to whether notice of transactions was given by plaintiff to defendant, and further "assuming the Guaranty Agreement is absolute and unconditional, there is a genuine issue of material fact as to the amount of the alleged indebtedness due plaintiff from the principal debtor." Defendant further alleged that the "pleadings, plaintiff's exhibits, affidavits and counter-affidavits of Ralph C. Fox and Paul Boznango filed by defendant show that plaintiff is not entitled to a summary judgment."

In the consideration of a motion for summary judgment, the long-established rule is set forth in Walling v. Fairmont Creamery Co., (8 Cir. 1943) 139 F.2d 318, at page 322 where the court said:

"On a motion for a summary judgment the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, all doubts are resolved against him, and his supporting affidavits and depositions, if any, are carefully scrutinized by the court. The object of the motion is to separate the formal from the substantial issues raised by the pleadings, and the court examines evidence on the motion, not to decide any issue of fact which may be presented, but to discover if any real issue exists."

The parties have submitted briefs in support of their respective contentions

and the motion is now ready for consideration and determination by the court.

Paragraph one of the Guaranty Agreement provides that defendant "unconditionally guarantees and promises on demand to pay Arkansas Poultry Cooperative, Inc., * * * all sums of money up to Sixty Thousand ($60,000.00) Dollars which may now or at any time hereafter be owed by Ollie's Chicken, Inc., of Kansas City, Missouri, to Creditor * * *, together with any and all interest, charges, fees, costs, and expenses, which may now or at any time hereafter be similarly owed in connection therewith, by reason of sales of chickens or other transactions between Creditor and the said Ollie's Chicken, Inc., of Kansas City, Missouri."

In paragraph 2 it is provided:

"The aforesaid obligation of Guarantor to Creditor is the inducement to Creditor to grant credit or assume a credit risk from time to time in respect of sales of chickens made by Creditor to Ollie's Chicken, Inc., of Kansas City, Missouri, and shall constitute a continuing guaranty and shall be revocable only as to transactions entered into by Creditor subsequent to the receipt by Creditor of a notice of termination sent by Guarantor by certified mail, which notice of termination may be sent by Guarantor at its option at any time."

Paragraph three provides:

" * * * Guarantor, without affecting liability hereunder in any respect consents to and waives notice of all changes of terms, the withdrawal or extension of credit, or time to pay, the release of the whole or any part of the indebtedness, the settlement or compromise of differences, the acceptance or release of security, the acceptance of notes, trade acceptances, or any other form of obligation for the aforesaid indebtedness, and the demand, protest, and notice of protest of such instruments or their endorsements."

The Guarantor "also consents to and waives notice of * * * anything whatsoever, whether or not herein specified which may be done or waived by or between the Creditor and Ollie's Chicken, Inc. * * *." That the Guarantor waives "notice of acceptance hereof and notice of orders, sales and deliveries to Ollie's Chicken, Inc., and of the amounts and terms thereof, except that Creditor shall furnish a monthly duplicate statement to Ralph C. Fox, Vice President, The Red Barn System, Inc., * * * showing the indebtedness of Ollie's Chicken, Inc., and of all defaults or disputes between Creditor and Ollie's Chicken, Inc. * * *."

Paragraph four provides:

"The obligation of the Guarantor hereunder is a primary and unconditional obligation and covers all existing and future indebtedness of Ollie's Chicken, Inc. to Creditor. This obligation shall be enforceable before or after proceeding against Ollie's Chicken, Inc. or against any security held by the Creditor and shall be effective regardless of the solvency or insolvency of Ollie's Chicken, Inc., at any time * * *."

On March 28, 1968, the defendant, by its Executive Vice President Ralph C. Fox, wrote plaintiff a letter in which he stated:

"This letter will constitute a notice of termination of guarantor under the terms of the Guaranty Agreement dated March 9, 1967. Effective the date of receipt of this notice of termination by you, the said Guaranty Agreement shall be considered null and void."

On May 21, 1968, Paul Boznango, President of Ollie's Chicken, Inc., wrote plaintiff enclosing three checks totaling $17,776.09. In the letter it was stated that the checks covered merchandise received in March, and "I will let you know when you can send them through the bank as we do not have enough in the bank to cover these checks at this time." On June 10, 1968, the defendant,

through Mr. Fox, wrote plaintiff as follows:

"Several months ago we indicated our decision to terminate a certain credit agreement between you, ourselves, and Ollie's Chicken. According to our records, we have issued sufficient checks to cover the then outstanding balance at Ollie's.

"Will you please confirm the position that Red Barn System is no longer obligated to honor this guaranty, and that all the provisions of that certain agreement have been satisfied."

On June 17, 1968, the plaintiff replied to Mr. Fox thanking him for the letter of June 10, and stated:

"We did get a letter from you sometime ago telling us of your intentions of termination credit agreement between Ollie's Chicken, Red Barn System and ourselves. However, it has not been all paid as yet.

"We have in our possession three checks from Ollie's in Kansas City that would pay this account in full but the checks cannot be cleared by the bank. Mr. Boznango tells me he does not have sufficient funds to cover them. We would like nothing better than to have these cleared. We need our money.

"Until these checks are cleared or the account has been satisfied you still have an obligation as this product was purchased before the credit agreement was terminated."

On October 25, 1968, the plaintiff again wrote Mr. Fox calling his attention to the fact that the three checks had not been paid, and payment of the checks had been stopped on July 13, 1968. Plaintiff also urged the defendant to pay the account as it had "let it go as long as we possibly can." The three checks that have not been paid are set forth in the record.

The defendant in its brief, submitted to the court in opposition to the motion of plaintiff, summarized on page 8 its contentions as follows:

"The defendant earnestly submits that as a matter of law, the guaranty was not absolute; that notice of transactions was a condition precedent to defendant's liability; and that there remain three genuine issues of fact for determination by the jury, i. e., (1) was notice of transactions given; (2) if notice of transactions was given, the exact amount of the indebtedness for which defendant is liable; and (3) if notice of transactions was not given, the exact amount of the loss from which the guarantor is released and discharged."

The defendant has not disclosed by affidavit or otherwise its connection with Ollie's Chicken, Inc., or why it executed and delivered the guaranty, nor has it controverted the affidavit of Crawford Palmer, Assistant Manager of plaintiff at Bentonville, Arkansas. In Mr. Palmer's affidavit it is stated that the affiant was privy to and had personal knowledge of the facts and circumstances preceding and occurring subsequent to the execution of the guaranty attached to plaintiff's complaint. Prior to the execution of the guaranty, representatives of Ollie's corresponded with plaintiff by telephone and by United States mail and solicited an arrangement, whereby plaintiff would from time to time sell and deliver on open account to the debtor quantities of chickens processed by plaintiff; "that the principal debtor is and was at all pertinent times herein wholly owned by the defendant, and that the defendant corresponded with the plaintiff herein by telephone and by use of the United States mails and agreed to furnish a guaranty of the principal debtor's obligations to the plaintiff up to $60,000." In February 1967 representatives of plaintiff met with representatives of the principal debtor and representatives of the defendant, at which time the basic provisions of the Guaranty Agreement were agreed upon. Plaintiff thereafter drafted the agreement in its original form in the State of Arkansas and transmitted it to the defendant, who

subsequently redrafted the document that was executed, and mailed it to the plaintiff, which appears as Exhibit A to the complaint. In a cover letter to the plaintiff, Mr. Willson, Vice-President and Assistant Secretary of defendant, requested that plaintiff send to the defendant a duplicate monthly statement showing the current balance of the account of Ollie's Chicken, Inc. The plaintiff proceeded to ship poultry products to the principal debtor on open account on a regular basis in reliance upon the guaranty and "pursuant to defendant's request mailed a duplicate monthly statement to defendant showing the current balance of the account of Ollie's Chicken, Inc." Said statements were paid by check upon the account of the principal debtor, "defendant's wholly owned subsidiary."

On July 22, 1971, plaintiff submitted certain requests, filed July 26, 1971, for admission of facts which were answered on August 20, 1971, by defendant. Request No. 3 was: "That plaintiff sold and shipped to the principal debtor, Ollie's Chicken, Inc., quantities of chickens in the month of March 1968 on open account in the total amount of $17,776.09." Answer No. 3: "Defendant cannot truthfully admit or deny the matters set out in Request No. 3 for the reason that defendant is without knowledge with respect to the matters referred to therein. Defendant has made reasonable inquiry and information known or readily obtainable by it is insufficient to enable it to admit or deny." Request No. 5 was: "That plaintiff has made demand for payment of said $17,776.09 upon both the principal debtor and the defendant herein, and that payment of said sum has been refused by each." Answer No. 5: "Defendant admits the demand for payment having been made against it by plaintiff and refusal by the defendant to make payment thereof for the reason that defendant is not indebted to plaintiff in the amount of $17,776.09 referred to therein or in any other amount, and the defendant is without sufficient knowledge as to whether or not principal debtor, Ollie's Chicken, Inc., is indebted to plaintiff for any amount; although defendant has made reasonable inquiry and the information known or readily obtainable by defendant is insufficient to enable defendant to admit or deny; to the contrary, the defendant states that the plaintiff is indebted to Ollie's Chicken, Inc., in an amount in excess of its claim referred to in Request No. 5."

On April 17 and 20, 1968, after the termination of the Guaranty Agreement, plaintiff did ship to Ollie's chickens of the value of $343.70, which are not included in the amount herein claimed by plaintiff although they were sold to Ollie's prior to the effective date of the termination of the guaranty.

The defendant, in its denial that the guaranty was absolute, contends that the plaintiff failed to furnish monthly duplicate statements to the Vice President of defendant showing the indebtedness of Ollie's Chicken, Inc.

In support of the contention the defendant submitted two affidavits. In the affidavit of Ralph C. Fox attached to the response of defendant, the following statements appear:

"This affiant states that he has never seen any monthly statement of the account between plaintiff and Ollie's Chicken during the period above referred to." (The period referred to is the period from May 16, 1967, through and including April 18, 1968.)

The following statement appears in the affidavit of Paul Boznango:

"Affiant further states that according to his best knowledge and belief, the provision in the Guaranty Agreement referred to in plaintiff's complaint, providing that plaintiff 'shall furnish a monthly duplicate statement to Ralph G. Fox, Vice President, Red Barn System, Inc., 2701 East Sunrise Boulevard, Fort Lauderdale, Florida, showing the indebtedness of Ollie's Chicken, Inc.,' has not been complied with, and said Ralph C. Fox has so indicated to this affiant."

In the affidavit of Mr. Carl Smith, General Manager of plaintiff during the time involved herein, the following statement appears:

"In reliance upon the Guaranty Agreement as aforementioned I, on behalf of Arkansas Poultry Cooperative, authorized and directed sales of chickens from Arkansas Poultry Cooperative to Ollie's Chicken, Inc., from May 16, 1967, through and including April 18, 1968. At the end of each month during the period in question, I directed that a duplicate monthly statement showing the then current open account indebtedness of Ollie's Chicken, Inc., to Arkansas Poultry Cooperative be sent to Mr. Ralph C. Fox, at his office at 2701 East Sunrise Boulevard, Fort Lauderdale, Florida."

In the affidavit of Mr. Crawford Palmer, Assistant Manager of plaintiff at Bentonville, Arkansas, the following statement appears:

"Pursuant to said guaranty agreement, and for one year after the execution of same, plaintiff shipped poultry products to the principal debtor on open account on a regular basis and in reliance upon the guaranty of defendant, and, pursuant to defendant's request, mailed a duplicate monthly statement to defendant, showing the current balance of the account of Ollie's Chicken, Inc."

In the defendant's summary of its contentions appearing as heretofore stated at page 8 of its brief in opposition to the motion, the defendant states that there remain three genuine issues of fact for determination by the jury, all revolving around whether notice of the current balance of Ollie's Chicken was given and the materiality of said notice under the circumstances.

Mr. Fox frankly admits in his affidavit that he had never seen any monthly statements of the account between plaintiff and Ollie's Chicken. Mr. Boznango in his affidavit states that Mr. Fox had indicated to him that the monthly duplicate statements were not mailed. Opposed to these two statements are the affidavits of Mr. Carl Smith in which he stated that he directed that such duplicate statements be mailed, and Mr. Palmer Crawford stated positively that such duplicate statements were actually mailed in accordance with defendant's request.

The affidavits of Mr. Fox and Mr. Boznango disclose that they are not based on the personal knowledge of the affiants. On the other hand, they are based entirely upon hearsay and neither witness would be competent to testify in a trial on the matter stated in the affidavits. The affidavit of Mr. Fox does contain an averment of personal knowledge, but fails entirely to set forth any facts as to the source of his knowledge of the alleged oral agreement, which he states was made on or about March 30, 1968, between plaintiff, Krispy Kitchens, Inc., and Ollie's Chicken. The affidavit of Mr. Boznango reveals very clearly that all the information he had came from Mr. Fox and was hearsay.

When the discovery procedures were being pursued, the plaintiff asked the defendant to furnish a list of the witnesses it expected to produce at the trial. A long list of witnesses were furnished, but no affidavit or other statement from any of those witnesses other than Mr. Fox and Mr. Boznango was submitted in opposition to the motion of plaintiff.

Rule 56(e), Fed.R.Civ.P., provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

See, also, 6 Moore's Federal Practice, 2d Ed., ¶ 56.22, p. 2803.

**220**

In Walling v. Fairmont Creamery Co., supra, the court 139 F.2d at page 322 stated:

"When affidavits are offered in support of a motion for summary judgment, they must present admissible evidence and must not only be made on the personal knowledge of the affiant, but must show that the affiant possesses the knowledge asserted."

In Kern v. Tri-State Insurance Co., (8 Cir. 1967) 386 F.2d 754, the court at page 756 said:

"The material upon which Kern's doctor based his expert opinion is a matter of court record with which Chief Judge Harper was thoroughly apprised, and was not a matter of personal knowledge of the doctor whose affidavit purported to establish Kern's insanity. Fed.R.Civ.P. 56(e), 28 U.S. C.A., specifically provides that such affidavits shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence. These mandatory provisions must be complied with. Maddox v. Aetna Cas. & Sur. Co., 259 F.2d 51 (5th Cir. 1958); Roucher v. Traders & General Ins. Co., 235 F.2d 423 (5th Cir. 1956); Zampos v. United States Smelting, Refining & Mining Co., 206 F.2d 171 (10th Cir. 1953); Person v. United States, 112 F.2d 1 (8th Cir. 1940), cert. denied, 311 U.S. 672, 61 S.Ct. 35, 85 L.Ed. 423 (1940). Not only was the expert's opinion defective in failing to have a basis of personal knowledge, but the admissibility of such evidence was clearly a matter of the trial court's discretion. Jones v. Goodlove, 334 F.2d 90 (8th Cir. 1964). In view of the judicial records in the trial court, said court would have been within its rights in rejecting the affidavit as being pure speculation and not substantial evidence. Compare United States v. Thornburgh, 111 F. 2d 278, 280 (8th Cir. 1940), and cases there cited."

■ The defendant on its brief attempts to create a genuine issue of material fact based upon its answer to plaintiff's request for admission No. 2. This request and the response thereto is the source of the contention that the guaranty contract was amended by the parties. Request No. 2 reads as follows: "That said guaranty constitutes the entire agreement between the plaintiff and the defendant." The defendant answered the request as follows: "This defendant states that said guaranty was executed by it upon plaintiff's representation that all moneys received by plaintiff from Ollie's Chicken, Inc., during the effective period of the Guaranty Agreement would first be applied upon any obligation that may be affected by said Guaranty Agreement before applying all or any part thereof on any other indebtedness, whether incurred before or after the effective period of the Guaranty." Based upon that answer the defendant now seeks to add to the terms of the written contract by contending that the plaintiff had dealings with Krispy Kitchens, Inc., but the record discloses without doubt that the plaintiff did nothing to modify in any respect the guaranty. At no time does the record reflect that the plaintiff engaged in a joint venture with Krispy Kitchens, Inc., or Ollie's Chicken. The only relationship that ever existed between plaintiff and Krispy Kitchens, Inc., according to the evidence before the court, was an open account indebtedness which resulted from sales of chickens by plaintiff to Krispy Kitchens, Inc., but did not in anywise affect or modify the terms of the written guaranty. The contract between plaintiff and defendant is unambiguous and complete in its terms, and parol evidence is not admissible to contradict, vary or add to any of its provisions.

The first paragraph of the Guaranty Agreement reads as follows:

"For valuable consideration, receipt of which is hereby acknowledged, the undersigned THE RED BARN SYSTEM, INC., of Fort Lauderdale, Florida, (hereinafter called Guarantor), hereby unconditionally guarantees and

promises on demand to pay ARKAN-SAS POULTRY COOPERATIVE, INC., of Bentonville, Arkansas, (hereinafter called Creditor), in lawful money of the United States all sums of money up to Sixty Thousand ($60,000.00) Dollars which may now or at any time hereafter be owed by OLLIE'S CHICKEN, INC., of Kansas City, Missouri, to Creditor, including any assigned claims, whether or not due, together with any and all interest, charges, fees, costs, and expenses, which may now or at any time hereafter be similarly owed in connection therewith, by reason of any sales of chickens or other transactions between Creditor and the said OLLIE'S CHICKEN, INC., of Kansas City, Missouri."

In Goodrum v. Merchants & Planters Bank, (1912) 102 Ark. 326, 144 S.W. 198, the court at page 33 of 102 Ark., at page 201 of 144 S.W. said:

"It has been uniformly held that where a written contract is plain, unambiguous, and complete in its terms, parol evidence is not admissible to add to or vary it. It has been said by this court: 'Antecedent propositions, correspondence, and prior writings, as well as oral statements and representations, are deemed to be merged into the written contract which concerns the subject-matter of such antecedent negotiations when it is free of ambiguity and complete.' Barry-Wehmiller Machine Co. v. Thompson, 83 Ark. 283, 104 S.W. 137. See, also, Cox v. Smith, 38 S.W. 978 [99 Ark. 218] and cases there cited. It has also been held by this court that where the written contract is complete in its terms, it can not be varied by adding thereto or engrafting thereon any condition by parol evidence. Lower v. Hickman, 80 Ark. 505, 97 S.W. 681; Johnson v. Hughes, 83 Ark. 105, 103 S.W. 184; Collins v. So. Brick Co., 92 Ark. 504, 123 S.W. 652."

In Bank of Morrilton v. Skipper, Tucker & Co., (1924) 165 Ark. 49, 263

S.W. 54, the court said at page 54 of 165 Ark., at page 56 of 263 S.W.:

"It was the duty of the court to interpret the contract according to its language, if clear and unambiguous, and it is obvious, from a consideration of the language of the contract that it was an absolute guaranty of the payment of the debt, and not conditional. Such being the case, the contract was an original undertaking to pay the debt, and liability of the guarantor immediately matured upon the failure of the principal debtor to pay, and it is not essential that before the obligee is entitled to sue the guarantor suit be commenced against the principal debtor and the claim reduced to judgment. Friend v. Smith Gin Co., 59 Ark. 86, 26 S.W. 374."

In Smith v. Farmers' & Merchants' Bank, (1931) 183 Ark. 235, 238, 35 S.W. 2d 347, 348, the court said:

"The note, for payment of which the guaranty contract was alleged to have been executed, was due, according to its terms 60 days after its date of January 6, 1920, long before the execution of the alleged guaranty contract on November 24, 1920. The liability of the guarantor was unconditional and absolute at the time of the execution of the guaranty contract, the principal debtors having failed to pay the note or obligation at maturity, for the payment of which the guaranty contract was made, and a cause of action accrued against the guarantor upon the execution thereof. Bank of Morrilton v. Skipper, Tucker Co., 165 Ark. 49, 263 S.W. 54; First National Bank of Helena v. Solomon, 170 Ark. 555, 280 S.W. 659."

In Jeter v. Windle, (1949), 229 Ark. 948, 319 S.W.2d 825, the Supreme Court of Arkansas, beginning at page 951 of 229 Ark., at page 826 of 319 S.W.2d said:

"No rule of law appears to be better settled than that where a written contract is plain, unambiguous and complete in its terms, parol evidence may

not be permitted to contradict, vary or add to any of its provisions. In Cox v. Smith, 99 Ark. 218, 138 S.W. 978, this court used this language: '* * * the cause of action herein sued on is founded upon an instrument which is a written contract, * * *. The rule of law that is applicable to all written instruments * * * is that parol testimony is inadmissible to contradict, vary, or add to its terms. * * * where the written contract is plain, unambiguous, and complete in its terms, it has been uniformly held by this court that parol evidence is not admissible to contradict or to vary or to add to any of the terms of a written contract. (Citing many cases.) Where the written contract is complete in its terms, it is incompetent to engraft thereon any condition by parol testimony * * *. Antecedent propositions, correspondence, prior writings, as well as oral statements and representations, are deemed to be merged into the written contract which concerns the subject-matter of such antecedent negotiations when it is free of ambiguity and complete.' '* * * When a written instrument contains such terms as import a complete obligation, which is definite and unambiguous, it is conclusively presumed that the whole agreement of the parties, and the extent and manner of their undertaking, were reduced to writing. In such cases, the instrument is in the nature of a contract, and cannot be varied or contradicted by parol evidence in the absence of fraud and mistake,' Wilson v. Nugent, 174 Ark. 1115, 299 S.W. 18, 21."

In 6 Moore's Federal Practice, 2d Ed., ¶ 56.17 [11], p. 2507, it is stated:

"The basic principles governing the grant or denial of summary judgment in other types of actions apply, of course, in actions for the reformation or rescission of a contract; or for specific performance, for damages, or for specific performance or in the alternative for damages of all types of contracts. In the latter class of actions where the claim or defense is predicated upon a written integrated contract that is unambiguous, the parol evidence rule may cut off the presentation of matter that would otherwise raise factual issues and hence summary judgment may be appropriate where in the absence of the parol evidence rule it would not be. If, however, the contract is not integrated or the contract is ambiguous, so that the parol evidence rule does not apply, and there are factual issues as to the contract entered into, summary judgment is inappropriate."

See, Goodrum v. Merchants & Planters Bank, supra.

The defendant also apparently contends that it never knew the amount for which it was liable nor the exact amount of the loss from which it was released and discharged.

As above indicated, the court is convinced that the monthly notices of the transactions were given and if the defendant was not advised of the exact status of the account, it has no one to blame except itself. The guaranty was executed for the purpose of promoting the business of the defendant through its subsidiary, and certainly it is reasonable to infer that the men in control of defendant knew the exact status of the account, the payment of which was guaranteed.

It should be borne in mind that soon after the termination of the Guaranty, three checks aggregating $17,776.09 were sent to plaintiff in settlement of the amount due. When payment was stopped on those checks, the plaintiff rechecked and reexamined the account, and upon readjustment of the freight charges, the amount was reduced to $17,566.66, which is the correct amount due as shown in the affidavit of Carl Smith.

The court is convinced that there is no disputed material fact and that the motion of plaintiff should be sustained, and

judgment is being entered today in favor of the plaintiff for $17,566.66 with interest at the rate of 6 percent per annum from May 21, 1968, together with costs.