**ARKANSAS POULTRY COOPERATIVE, INC., Appellee,**

v.

**The RED BARN SYSTEM, INC., Appellant.**

**No. 72–1068.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1972.

Decided Nov. 6, 1972.

Joseph S. Levy, Kansas City, Mo., for appellant.

James M. Roy, Jr., Fayetteville, Ark., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and TALBOT SMITH,[*] District Judge.

STEPHENSON, Circuit Judge.

This cause of action comes before us from the United States District Court for the Western District of Arkansas. Defendant-appellant (hereinafter "Red Barn") appeals from the trial court's entry of summary judgment, D.C., 335 F. Supp. 214, entered under date of December 28, 1971 in the amount of $17,566.66 bearing interest at six per cent (6%) per annum from May 21, 1968.

In keeping with the progeny of International Shoe Co. v. Washington, 326 U. S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), we are asked to decide whether Red Barn was "doing business" in Arkansas sufficient to warrant the assertion of in personam jurisdiction over the non-resident corporation by the federal district court. Our response is in the negative.

Plaintiff-appellee's (hereinafter "Arkansas Poultry") complaint prayed judgment based upon a letter of guarantee, ostensibly executed by Red Barn to guarantee the debt of the principal debtor, Ollie's Chicken, Inc., a Missouri corporation doing business in Kansas City, Missouri (Ollie's Chicken). Federal jurisdiction was invoked upon the allegation that there was a diversity of citizenship and that the amount in controversy exceeded $10,000.[1]

Pursuant to the Arkansas "long-arm" statute, Ark.Stat.Ann. § 27–2502 C 1(a) (1969 Supp.), in personam jurisdiction was asserted upon the theory that the non-resident defendant had transacted business in the forum state making it amenable to service. Red Barn moved to dismiss the action for want of sufficient minimal contacts with the state of Arkansas. The trial court denied the motion.

The record does not contain any specific findings of fact in connection with the denial of the motion to dismiss, and the affidavits filed by the respective parties are in dispute. Nevertheless, assuming *arguendo* the truth of the matter contained in Arkansas Poultry's affidavit in opposition to the instant motion, in personam jurisdiction cannot be upheld.

Initially we note that Red Barn does no business in Arkansas except in the instance claim in this suit.

Affiant Crawford Palmer, Assistant Manager of Arkansas Poultry, stated that prior to the execution of the guarantee, representatives of Ollie's Chicken and Arkansas Poultry by means of the telephone and U. S. mail agreed that Arkansas Poultry would sell certain quantities of processed chicken on open account to Ollie's Chicken; that during February, 1967, representatives of Arkansas Poultry, Ollie's Chicken and Red Barn met in Kansas City, Missouri at which time the basic provisions of the guarantee agreement were agreed upon; that thereafter Arkansas Poultry drafted the original guarantee agreement and mailed it to Red Barn at the home office of the latter in Fort Lauderdale, Florida; that the agreement was received by Red Barn who re-drafted a new guarantee, executed and mailed it to Arkansas Poultry in Bentonville, Arkansas on or about March 9, 1967; that pursuant to Red Barn's request, Arkansas Poultry mailed duplicate monthly statements to Red Barn showing the current balance of the account of Ollie's Chicken; that through and including February, 1968, shipments were made to Ollie's Chicken and paid for by check drawn upon Ollie's Chicken and mailed into Arkansas; that by letter of March 28, 1968 Red Barn notified plaintiff that said guarantee agreement was terminated; that Arkansas Poultry allegedly has not received payment for merchandise received by Ollie's Chicken during March of 1968; and

[*] Sitting by designation.

[1] 28 U.S.C. § 1332(a)(1).

that representatives of Red Barn and Arkansas Poultry met in Bentonville, Arkansas during March of 1969, in an attempted settlement of the alleged outstanding debt. This meeting was not related to the negotiations leading up to the guarantee agreement.

The trial court based its decision to overrule Red Barn's motion on Pennsalt Chemical Corp. v. Crown Cork & Steel Co., Inc., 244 Ark. 638, 426 S.W.2d 417 (1968). *Pennsalt* lends no support for that action. In *Pennsalt*, the Arkansas Supreme Court found in personam jurisdiction in a combined tort and warranty action under the provisions of the "long-arm" statute in issue on findings that a non-resident corporation shipped its manufactured products into Arkansas, received revenue therefrom, and through its agent, physically present in Arkansas, solicited business through advertising brochures left with Arkansas customers. Under the mandate of International Shoe Co. v. Washington, *supra*, the Arkansas court determined that the nexus between the non-resident defendant and the forum state was substantial enough that in personam jurisdiction would lie. We are not presented with similar substantial contacts.

Arkansas Poultry emphasizes both in its brief and in oral argument Travelers Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950), cited in *Pennsalt, supra,* for the proposition that in personam jurisdiction may be effectuated over a non-resident defendant where the only contact with the forum state is by means of the U. S. mail. *Travelers Health* is likewise distinguishable from our situation. That case involves the solicitation by a Nebraska Association of mail-order health insurance business in the State of Virginia. Accordingly, the United States Supreme Court found that "[t]he Association did not engage in mere isolated or short-lived transactions," and that the systematic solicitation of insurance certificates in the State of Virginia created "continuing obligations between the Association and each of the many certificate holders in [that] state" sufficient to subject the Association to in personam jurisdiction. 339 U.S. at 648, 70 S. Ct. at 930.

More importantly, Arkansas Poultry relies upon the construction we gave to the Arkansas "long-arm" statute in Thompson v. Ecological Science Corp., 421 F.2d 467 (8th Cir. 1970) and attempts to analogize Thompson to the case before us. We disagree. In the instant cause the salient contractual negotiations took place outside the state of Arkansas. The same is not true in *Thompson* wherein we stated at 421 F. 2d at 469, that "although the number of separate contacts with the state [of Arkansas] were not many, the *pervasive contact was the negotiations leading up to the execution of the actual contract,"* which took place solely in Arkansas. (emphasis supplied).

 Each case involving in personam jurisdiction over a non-resident defendant must be decided on its own facts. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).; Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965). Although the boundary of in personam jurisdiction cannot be mechanical, Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, we note carefully that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." International Shoe Co. v. Washington, *supra*; Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

 Based upon this record we are satisfied that sufficient contacts necessary to invoke in personam jurisdiction have not been shown.[2] We therefore re-

---

2. Although we have assumed the truth of the facts set out by Arkansas Poultry in their affidavit for the purpose of disposing of the motion to dismiss, it should be

verse the decision of the trial court with instructions to enter an order sustaining Red Barn's motion to dismiss for want of jurisdiction.[3]

Reversed.[4]

noted that Red Barn in opposition to the motion to dismiss filed the following affidavit which reads in part as follows:

\* \* \* \* \*

"3. That no representative of the defendant appeared within the State of Arkansas to participate in any negotiations leading up to the execution of the Guaranty Agreement; that all negotiations leading up to the execution of the Guaranty Agreement took place within the State of Missouri.

4. That although affiant and Tom C. Willson, then Assistant Secretary of defendant corporation, met with representatives of plaintiff corporation in March, 1969, in plaintiff's office in Bentonville, Arkansas, that said meeting was in no way related to the negotiations leading up to the execution of the Guaranty Agreement.

5. That said conference meeting, held in Bentonville, Arkansas in March, 1969, was long after the termination of the Guaranty Agreement, which is the subject matter of the above-entitled lawsuit, and long after a breach thereof on the part of the plaintiff."

\* \* \* \* \*

3. We note further that in an Arkansas Poultry affidavit, it was stated that Ollie's Chicken was a wholly owned subsidiary of Red Barn. This was specifically denied by counsel for Red Barn in oral argument and not then rebutted by Arkansas Poultry.

4. In view of our reversal for lack of jurisdiction, we do not reach other issues raised by Red Barn, including its claim that summary judgment was clearly inappropriate because a material disputed fact existed, in that by affidavit Ollie's Chicken asserted that the account with Arkansas Poultry was fully paid.